THE HONORABLE THOMAS S. ZILLY

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ANGEE HARRINGTON and LAUREN
ARNDT, on behalf of themselves and all
others similarly situated,

               Plaintiffs,

    v.

VINEYARD VINES, LLC, a Connecticut
limited liability company,

               Defendant.

Case No. 2:25-cv-01115-TSZ

**DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**

NOTE ON MOTION CALENDAR:
October 28, 2025

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

I.    **INTRODUCTION**

In this putative class action brought under Washington's Commercial Electronic Mail Act ("CEMA"), Plaintiffs seek $500 for every email that Defendant Vineyard Vines sent containing *any* alleged inaccuracy or omission in its subject line—no matter how immaterial, and regardless of whether Plaintiffs read, relied upon, or were injured by it.

Plaintiffs advance two theories why Defendant's subject lines were misleading. First, they assert that some subject lines understated—by a single day—how long certain sales would last (the "Temporal Theory"), i.e., the sale lasted one day *longer* than initially advertised. However, Plaintiffs do not allege they read, relied upon, or were injured by any such statement, or that they ever bought anything from Defendant.

Second, Plaintiffs point to a handful of emails advertising sales of "30% off everything" in the subject line. Plaintiffs aver these emails were misleading because a minimum purchase amount applicable to the promotion—while prominently disclosed in large, bold all-caps font in the email body—was not additionally disclosed in the *subject line itself* (the "Omission Theory"). Because Defendant conspicuously disclosed this amount exactly where a reasonable consumer would expect to find sale terms—the email body itself—Plaintiffs do not plausibly allege that these purported omissions were misleading, much less that they had any impact on Plaintiffs' own, or a reasonable consumer's, purchase decisions. Accordingly, three courts have rejected similar omission theories. Hence, Plaintiffs fail to plead plausibly and with particularity that Defendant's alleged misstatements were material, intentional, relied upon, and injurious.

For these reasons, Plaintiffs' theories are preempted by federal law. Five years after CEMA's enactment, Congress addressed the inconsistent patchwork of state statutes, like CEMA, regulating commercial email by adopting the Controlling the Assault of Non-Solicited Pornography and Marketing ("CAN-SPAM") Act of 2003, 15 U.S.C. § 7701 *et seq*. CAN-SPAM expressly preempts state statutes, like CEMA, that "regulate[] the use of electronic mail to send commercial messages." 15 U.S.C. § 7707(b)(1). While CAN-SPAM contains a "limited, narrow

exception" to preemption for state laws prohibiting "falsity or deception," the Ninth Circuit has held that this exception is limited to claims involving "*traditionally tortious*" conduct, i.e., fraud or deceit claims. *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1061-62 (9th Cir. 2009) (emphasis added). By contrast, claims based on "immaterial inaccuracies or omissions" are preempted. *Id*.

Here, Plaintiffs' asserted theories do not fit within this narrow exception because they do not involve traditionally tortious conduct. Misrepresentation torts like fraud and deceit require proof of materiality, scienter, reliance, and injury, but Plaintiffs do not plead plausibly and with particularity *any* of these elements. Instead, Plaintiffs seek to impose strict liability, based on speculative allegations concerning misstatements and omissions in subject lines that Plaintiffs themselves concede by silence were not material to them, did not deceive them, and did not otherwise harm them. And because Plaintiffs' CEMA claims fail, their Washington Consumer Protection Act ("CPA") claims predicated on those claims fail too.

As Plaintiffs have exercised their opportunity to amend their pleadings to cure—without success—deficiencies identified by Defendant in its prior motion to dismiss, the Amended Complaint ("FAC" or "Complaint"; Dkt. 23) should be dismissed with prejudice.

## II.    BACKGROUND

Plaintiffs claim Defendant is strictly liable under CEMA because it sent emails with subject lines that allegedly: (i) understated the length of the advertised sales; or (ii) omitted a minimum purchase amount associated with the advertised promotion. FAC ¶¶ 20–37. Scrutiny of the specific emails underlying Plaintiffs' Omission Theory, however, underscores the technical and immaterial nature of these alleged violations. *Webb v. Trader Joe's Co*., 999 F.3d 1196, 1201 (9th Cir. 2021) ("[W]hen ruling on [a motion to dismiss under Rule 12(b)(6)] courts *must* consider the complaint in its entirety, as well as other sources," in particular, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice") (emphasis added). As those emails themselves confirm, the minimum purchase amount was conspicuously disclosed in large, all-caps font in each email body, *see* Declaration of Kathryn Slusher ("Slusher Decl."),

DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED CLASS
ACTION COMPLAINT - 2
(Case No. 2:25-CV-01115-TSZ)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400    FAX +1.206.274.6401

1  Dkt. 21, Exs. 2–4 (emails referenced at Paragraph 37 of FAC), as well as in the email sub-header

2  of two of the three emails. *Id.*, ¶ 8; Exs. 2, 4. Notably, this sub-header was visible without even

3  opening the email. *Id.*

4  Plaintiffs do not allege that *any* alleged misstatement was material to any purchase decision

5  they made. FAC ¶¶ 44–51. Nor do they allege that they ever read, relied upon, or were injured

6  by any alleged misstatement or were denied any advertised discount. *See id.* In fact, Plaintiffs do

7  not allege ever buying *anything* from Defendant. *See id.* As they suffered no purported injury,

8  Plaintiffs seek statutory damages only. *Id.*, ¶¶ 5, 83, 85, Request for Relief, ¶ F. Plaintiffs also

9  aver that Defendant's violation of CEMA "per se" violated the CPA. *Id.*, ¶¶ 4, 12, 75–86.

10  In its prior motion to dismiss, Defendant demonstrated that Plaintiffs' strict liability theory

11  was preempted by federal law. Rather than respond to that Motion,[1] Plaintiffs filed the FAC adding

12  a new plaintiff and some new allegations, but Plaintiffs' amended pleading fails for virtually all

13  the same reasons discussed previously.

14  ### III.  LEGAL STANDARD

15  To avoid dismissal, a complaint must contain "sufficient factual matter" to "state a claim

16  to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and that "raise[s]

17  a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

18  (2007). "[C]onclusory allegations of law" and "unwarranted inferences are insufficient."

19  *Dahlstrom v. Life Care Centers of Am., Inc.*, 2023 WL 4893491, at *3 (W.D. Wash. Aug. 1, 2023).

20  To the extent Plaintiffs contend that their claims are based on intentional rather than

21  inadvertent misstatements, they also must comply with Rule 9(b)'s heightened pleading standard.

22  *See Mostowfi v. i2 Telecom Int'l, Inc*., 269 F. App'x 621, 623 (9th Cir. 2008) ("Rule 9(b) may

23  apply to claims—that although lacking fraud as an element—are 'grounded' or 'sound' in fraud.")

24  (citations omitted). Under Rule 9(b), "[a]ll of these elements"—including falsity, materiality,

25

26  ---

[1] Under Local Rule 7(b)(2), a failure to oppose a motion to dismiss "may be considered by the court as an admission that the motion has merit."

DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED CLASS
ACTION COMPLAINT - 3
(Case No. 2:25-CV-01115-TSZ)

reliance, injury, and scienter—"must be plead with particularity." *Khan Air, LLC v. U.S. Aircraft Ins. Grp.,* 2005 WL 2739167, at *1 (W.D. Wash. Oct. 24, 2005).

### IV.    ARGUMENT

Plaintiffs' claims should be dismissed because they are preempted by federal law. Courts have made clear that only claims based on traditional tort theories—i.e., that involve the elements of common law fraud or deceit—survive preemption. Because neither theory advanced does so, neither theory survives preemption. Furthermore, Plaintiffs' Omission Theory fails on two additional, independent grounds: (i) it is foreclosed by precedent post-*Virtumundo*; and (ii) courts have repeatedly rejected similar omission theories, because no reasonable consumer would expect an email *subject line* to contain all sale terms and conditions.

#### A.    Standard for CAN-SPAM Preemption

##### 1.    Congress Enacted CAN-SPAM to Address the Patchwork of State Laws.

Under the Supremacy Clause, "state laws that conflict with federal law are 'without effect.'" *Altria Group, Inc. v. Good*, 555 U.S. 70, 76 (2008) (citations omitted). Express preemption occurs where "Congress explicitly defines the extent to which its enactments preempt state law." *Virtumundo*, 575 F.3d at 1060.

That is what Congress did here. In 2003, Congress passed CAN-SPAM. In the preceding five years, Washington and other states had enacted a slew of inconsistent and ineffective laws to "regulate or reduce unsolicited commercial electronic mail." 15 U.S.C. § 7701(a)(11). Those "different standards and requirements" failed to "address[] the problems associated with unsolicited commercial electronic mail." *Id.* And because an email address "does not specify a geographic location," law-abiding businesses found it "extremely difficult" to "know with which of these disparate statutes they [were] required to comply." *Id.* Congress, therefore, replaced this patchwork with a single, national standard.

Recognizing the "beneficial aspects" of commercial email, *Virtumundo*, 575 F.3d at 1049, Congress struck a "careful balance" between preserving a "useful commercial tool and preventing

DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED CLASS
ACTION COMPLAINT - 4
(Case No. 2:25-CV-01115-TSZ)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400    FAX +1.206.274.6401

1  its abuse." *Omega World Travel, Inc. v. Mummagraphics, Inc.*, 469 F.3d 348, 354 (4th Cir. 2006)

2  ("*Omega*").   Accordingly, Congress only banned commercial emails where a subject line is:

3  (i) "*likely* to mislead a recipient" about (ii) "a *material* fact regarding the contents or subject matter

4  of the message," and (iii) where the sender had "*actual knowledge*," or "*knowledge fairly implied*

5  on the basis of objective circumstances," of such falsity.  15 U.S.C. § 7704(a)(2) (emphasis added).

6  These requirements broadly reflect the elements of traditional tort theories, such as common law

7  claims for fraud or deceit.  *See Elcon Const., Inc. v. E. Washington Univ.*, 273 P.3d 965, 970

8  (Wash. 2012) ("*Elcon*") (outlining elements of fraud as a misrepresentation of an existing, material

9  fact, made with knowledge of its falsity and to induce the plaintiff to rely on it, and that plaintiff

10  suffered damages after reasonably relying upon it, unaware of its falsity).

11  ## 2.    Only Claims Involving Fraud or Deceit Survive Preemption.

12       To prevent states from diluting these requirements, Congress prescribed that CAN-SPAM

13  "supersedes any statute, regulation, or rule" that "expressly regulates the use of electronic mail to

14  send commercial messages[.]" 15 U.S.C.  § 7707(b)(1).  This expansive language preempts state

15  regulation of commercial email with "*limited, narrow exception*."  *Virtumundo*, 575 F.3d at 1061

16  (emphasis added).  Specifically, CAN-SPAM exempts from preemption state laws that prohibit

17  "falsity or deception in any portion of a commercial [e]mail."  § 7707(b)(1).  But the Ninth Circuit

18  has narrowly read this exemption as embracing state-law claims based on "*traditional tort

19  theories*" only—i.e., claims involving "*traditionally tortious* or wrongful conduct."  *Virtumundo*,

20  575 F.3d at 1061-64 (citing 15 U.S.C. § 7707(b)(2)) (emphasis added).  Consequently, the Ninth

21  Circuit held that only claims resembling a "*tort action based on misrepresentations*"—i.e.,

22  common law fraud or deceit claims—survive preemption.  *Id*. at 1062 (emphasis added).  The

23  Ninth Circuit stressed that a contrary reading of the preemption exception would create a "loophole

24  so broad that it would virtually swallow the preemption clause itself."  *Id.* at 1061.  Because the

25  plaintiff's CEMA claim found "no basis in traditional tort theories," the Ninth Circuit concluded

26  his claim was preempted.  *Id*. at 1064.

DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED CLASS
ACTION COMPLAINT - 5
(Case No. 2:25-CV-01115-TSZ)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

Prior to *Virtumundo*, in 2006, the Fourth Circuit addressed whether CAN-SPAM preempted claims brought under CEMA's Oklahoma analogue and reached the same conclusion as the Ninth Circuit. *Omega*, 469 F.3d at 354. Like CEMA, the Oklahoma statute prohibits sending an email that: (i) "[m]isrepresents any information in identifying [its] point of origin"; or (ii) "[c]ontains false [. . .] or misleading information." *Id*. at 353 (citing Okla. Stat. tit. 15, § 776.1A). And like CEMA, these prohibitions "reach beyond common law fraud or deceit." *Id*. at 353. Indeed, in contrast to a common law fraud or deceit claim, the Oklahoma statute does *not* require proof that: (i) "inaccuracies" were "material," (ii) "led to detrimental reliance," and (iii) were "made by a sender who intended that the misstatements be acted upon and either knew them to be inaccurate or was reckless about their truth." *Id*.; *see also Isomedia, Inc. v. Spectrum Direct, Inc*., 2009 WL 10676391, at *3 (W.D. Wash. May 27, 2009) (CEMA does not require "all the elements of common law fraud," including reliance, injury, and scienter); *Virtumundo*, 575 F.3d at 1059 (CEMA "purport[s] to regulate a *vast array* of *non-deceptive* acts and practices" and imposes liability for "*unintentional* clerical errors" and "*imperfect* representations") (emphasis added). The Fourth Circuit agreed with the District Court that the plaintiff's claims were preempted because they did not involve a traditional tort theory, which would require proof of materiality and scienter. *Omega*, 469 F.3d at 353-54.

Notably, *Omega* narrowly read the preemption exception for claims based on "falsity or deception," 15 U.S.C. § 7707(b)(1)—the same exception that Plaintiffs can be expected to invoke here. 469 F.3d at 354. The Fourth Circuit reasoned, "[T]he pre-emption clause links 'falsity' with 'deception' . . . . This pairing suggests that Congress was *operating in the vein of tort* when it drafted the pre-emption clause's exceptions, and intended falsity to refer to *other torts involving misrepresentations*, rather than to sweep up errors that do not sound in tort." *Id*. (emphasis added). The Fourth Circuit stressed that, in contrast to claims based on "error[]," fraud and deceit torts require materiality, justifiable reliance, actual injury, and fraudulent intent. *Id.* (citing *Rogers v. Meiser*, 68 P.3d 967, 977 (Okla. 2003); Restatement (Second) of Torts § 525 (stating that claim

for "deceit," i.e., "fraudulent misrepresentation," requires fraudulent intent, "justifiable reliance upon the misrepresentation," and "pecuniary loss")); *accord Elcon*, 273 P.3d at 970 (summarizing elements of common law fraud).

The Fourth Circuit's alignment of the preemption exception with "torts involving misrepresentations" is further supported by "[o]ther sections of the CAN-SPAM Act," which also require materiality and scienter. *Omega*, 469 F.3d at 354; 15 U.S.C. § 7704(a)(2) (expressly requiring sender's "knowledge" of falsity to impose liability). The Fourth Circuit reasoned that permitting states to dilute these traditional tort requirements by imposing liability for "insignificant inaccuracies" would "undermine[] to the point of near-irrelevancy" the "national standard" that Congress created and its "plain intent." *Id*. at 355. Indeed, allowing a "*strict liability* standard imposed by a state such as Oklahoma would become a de facto national standard"—even though Congress clearly "believed a *less demanding* standard" would strike the appropriate balance. *Id*. at 356 (emphasis added). The Ninth Circuit "reach[ed] the same conclusion" after close analysis. *Virtumundo*, 575 F.3d at 1061-62.

### B.    Plaintiffs' Omission Theory Is Foreclosed at the Threshold.

Plaintiffs' Omission Theory fails at the outset for two reasons: (i) *Virtumundo's* progeny forecloses it; and (ii) the subject lines identified do not contain any "false or misleading" information, as required to state a CEMA claim. Accordingly, three courts have squarely rejected similar theories.

#### 1.    Plaintiffs' Omission Theory Fails Post-*Virtumundo*.

In *Martin v. CCH, Inc*., a federal district court confirmed that the Ninth Circuit's binding decision in *Virtumundo* foreclosed an omission theory similar to that advanced here. 784 F. Supp. 2d 1000, 1007 (N.D. Ill. 2011).

In *Martin*, the plaintiff alleged that the defendant was liable under the Illinois analogue to CEMA, the Illinois Electronic Mail Act, because the defendant sent emails with subject lines that were allegedly materially misleading because they told a "half-truth." *Id.* Specifically, while the

DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED CLASS
ACTION COMPLAINT - 7
(Case No. 2:25-CV-01115-TSZ)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400    FAX +1.206.274.6401

1    defendant's subject lines "accurately tell the recipient that there is an advertisement inside," they

2    allegedly "intentionally omit the 'secret' 'information-harvesting' purpose of the e-mails"—i.e.,

3    to "surreptitiously allow Defendant to gather data about when the e-mail is opened and where the

4    recipient is when he opens the e-mail." *Id.* But the court rejected this theory of liability—premised

5    on purportedly "incomplete" information in an email subject line—because "two circuits have held

6    that less than comprehensive information outside the body of an e-mail is at best a technical

7    allegation that finds no basis in traditional tort theories and thus falls within CANSPAM's express

8    preemption clause (and outside the exception)." *Id.* Further, "even if the omitted information

9    could be deemed not only incomplete but also 'misleading,'" the plaintiff's claim "still would be

10    preempted" because any omission was immaterial. *Id.* (citing 15 U.S.C. § 7704(a)(2)).

11         *Virtumundo* and *Martin* compel the same result here. As in *Martin*, Plaintiffs here aver

12    that Defendant's *subject lines* were "less than comprehensive" because they did not recite all

13    conditions applicable to the advertised sale. *Id.*; *see generally* FAC ¶¶ 33–37. In fact, the omission

14    alleged here was even more innocuous than those in *Martin*, because Defendant undisputedly

15    disclosed the minimum purchase amount in large, bold, all-caps font in the email body. *See* Dkt.

16    21, Exs. 2–4. Hence, the purely "technical" violation Plaintiffs allege, premised on technically

17    "incomplete" information in a subject line, has "no basis in traditional tort theories" and is thus

18    preempted. *Martin*, 784 F. Supp. 2d at 1007.

19                   2.       Plaintiffs Fail to Identify a False or Misleading Statement.

20         Additionally, Plaintiffs' Omission Theory fails because the subject lines identified do not

21    contain any false information to begin with.

22         To state a claim under CEMA, a complaint must plausibly allege that an email subject line

23    contains false or misleading information. RCW 19.190.020(1)(b). Whether a complaint does so

24    constitutes a "question of law" that "may be decided on a motion to dismiss." *In re Pac. Mkt. Int'l,*

25    *LLC, Stanley Tumbler Litig.*, 764 F. Supp. 3d 1026, 1036 (W.D. Wash. 2025).

26

DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED CLASS
ACTION COMPLAINT - 8
(Case No. 2:25-CV-01115-TSZ)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400    FAX +1.206.274.6401

1  Here, Plaintiffs' Omission Theory focuses on three emails, but none contains a false or

2  misleading statement in its subject line. FAC ¶ 37. The subject line of the email sent on March

3  22, 2025, for example, allegedly stated, "FREE Shipping." FAC ¶ 37. Plaintiff does not claim

4  that statement was untruthful—i.e., Plaintiff does not dispute that free shipping was available on

5  Defendant's apparel, in accordance with the terms prominently disclosed in the email body. FAC

6  ¶ 37; *see* Dkt. 21, Ex. 3. Plaintiffs also allege that the subject lines of three emails reference a 30%

7  off sale on "everything." FAC ¶ 37. But again, Plaintiffs do not allege this was untruthful. They

8  do not claim that Defendant failed to offer 30% off "everything"—i.e., all advertised goods. FAC

9  ¶¶ 33–37; *see* Dkt. 21, Exs. 2–4.

10  Instead, Plaintiffs' apparent theory is that these emails could mislead a reasonable

11  consumer because their subject lines did not separately disclose the minimum purchase amount

12  applicable to the promotion. FAC ¶¶ 34–36. That theory defies the law and common sense. No

13  "reasonable consumer[]", *Shellenberger v. AIG WarrantyGuard, Inc*., 2025 WL 732874, at *5

14  (W.D. Wash. Feb. 3, 2025), "acting reasonably under the circumstances," would be misled in this

15  situation. The minimum purchase amount was conspicuously disclosed in large, bold, all-caps font

16  in the email body—exactly where a reasonable consumer would expect to find sale terms. *T-*

17  *Mobile US, Inc. v. Simply Wireless, Inc.*, 2022 WL 1486522, at *3 (W.D. Wash. May 11, 2022);

18  *see* Slusher Decl., Dkt. 21, Exs. 2–4. But more importantly, no reasonable consumer would expect

19  an email *subject line* to exhaustively recite those details, because no reasonable consumer could

20  possibly expect an email *subject line* to contain all terms and conditions. *Shellenberger* 2025 WL

21  732874, at *6 (falsity not adequately alleged because "after reading Defendants' offer, a reasonable

22  consumer would realize that it does not contain all applicable terms and conditions, and the

23  consumer would know to follow the link in the disclaimer to view the terms and conditions");

24  *Shellenberger v. AIG WarrantyGuard, Inc*., 2024 WL 4144108, at *8 (W.D. Wash. Sept. 11, 2024)

25  (finding case law "overwhelmingly supports Defendants' position that a consumer cannot plead

26

DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED CLASS
ACTION COMPLAINT - 9
(Case No. 2:25-CV-01115-TSZ)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400    FAX +1.206.274.6401

1    deception" based on purportedly "surprise" terms that were "fully and sufficiently disclosed to her,

2    but that she failed to read").

3           Accordingly, a similar theory advanced under an analogous statute—the Maryland

4    Commercial Electronic Mail Act ("MCEMA"), Md. Code Ann., Com. Law § 14-3002—was

5    squarely rejected. MCEMA prohibits sending emails with "false or misleading information in the

6    subject line that has the capacity, tendency, or effect of deceiving the recipient." *Id.* § 14-

7    3002(b)(2)(iii). In *Walton v. Network Solutions*, the plaintiff claimed defendant's email subject

8    lines were misleading under MCEMA because they advertised sales without disclosing all

9    applicable terms and conditions—for example, "Register Domains for Just $6.99!"; and "Limited

10   Time Offer—$2.95 Domain Sale!" 110 A.3d 756, 765–66 (Md. Ct. Spec. App. 2015). The

11   Maryland Court of Special Appeals rejected the plaintiff's argument because the "body of the e-

12   mail provided recipients with contact information including the company's website," and the Court

13   could not "draw a reasonable inference that a consumer would likely be deceived or misled by

14   these e-mails." *Id.* at 765–66.

15          Following *Walton*, another Maryland court rejected a theory identical to the one Plaintiffs

16   now advance—i.e., that the defendant's email subject lines failed to disclose a minimum purchase

17   amount applicable to the advertised promotion. In *Asabre v. Retail Services & Systems, Inc.*, the

18   plaintiff alleged that the defendant violated MCEMA by sending emails with "subject lines that

19   promise that the recipient will receive discounts on the purchase of products from Defendant's

20   stores," but "if the recipient opens the email, it becomes clear that the discounts are conditioned or

21   restricted to certain items and certain purchases." Mem. Op. 3, No. 15-CV-21-000459 (Circuit

22   Court for Montgomery Cty.) (attached as Exhibit 1 to the Declaration of Ari M. Selman). The

23   *Asabre* court squarely rejected the plaintiff's argument that these subject lines were "misleading,

24   or even potentially misleading," explaining:

25            Pursuant to the standards set forth in *Walton*, the subject line is not required to

26            include every conceivable limitation on an offer. **No reasonable person would
              conclude from the . . . subject line that there are no limitations. . . .** The fact that

DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED CLASS
ACTION COMPLAINT - 10
(Case No. 2:25-CV-01115-TSZ)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

> a consumer must buy a minimum [amount to activate the sale] . . . is not enough to make the subject line misleading, or even potentially misleading.

*Id.* at 7 (emphasis added). A contrary finding, the court noted, would be "completely unworkable" as "no subject line could ever comply with the MCEMA because there would always be some meaningful limitation that is not in the subject line." *Id.* Indeed, requiring email subject lines to include every term and condition of a sale would defeat their very purpose—to provide the reader with a pithy description of the topic of the email, not convey the entirety of an email message or all sale terms. Further, subject lines containing dense, redundant disclosures would defeat this purpose and confound—not edify—consumers.

Further, while CEMA prohibits misleading information in the "subject line of the e-mail and not its body," *Brown v. Old Navy, LLC,* 567 P.3d 38, 46 (Wash. 2025), nothing in its text forbids examination of the entire email communication, consistent with how a reasonable consumer functions, to aid determination of whether a subject line is misleading. For this reason, in the CPA context, courts have rejected the notion that an advertised offer is misleading—*even where* the full terms and conditions of the offer are disclosed in an entirely separate document from the advertisement itself. In *Shellenberger*, 2025 WL 732874, at \*5-\*6, for example, the plaintiff argued that an advertised offer for a dishwasher service plan was "false or misleading" under the CPA because the offer advertised free repairs but did not disclose that the defendant could instead choose to provide "a one-time buyout payment capped at 75% of her dishwasher's purchase price." Rejecting that argument, the court explained that "a reasonable consumer would realize that [the advertised offer] does not contain all applicable terms and conditions, and the consumer would know to follow the link in the disclaimer to view the terms and conditions." *Id.* at \*6; *see also Storey v. Amazon.com Servs. LLC*, 2024 WL 2882270, at \*6 (W.D. Wash. June 7, 2024) (finding "Guaranteed Delivery" not deceptive where terms of guarantee were disclosed in website help pages); *T-Mobile US, Inc.*, 2022 WL 1486522, at \*3 (the "test" under CPA is "whether the net impression created by a solicitation, viewed as a whole rather than as individual

1   parts, is deceptive"). Here, Plaintiffs' theory is even more tenuous than the one rejected in

2   *Shellenberger* and *Storey* because, again, the minimum purchase amount was prominently

3   disclosed in each *email advertisement itself*—not a separate document. *See* Dkt. 21, Exs. 2–4.

4       Because no "reasonable consumer" would be deceived, there is no CEMA violation.

5   *Taylor v. Amazon.com, Inc*., 2025 WL 104381, at *5 (W.D. Wash. Jan. 15, 2025).

6       **C.    Plaintiffs' CEMA Claims Are Preempted Because They Do Not Plausibly**
7       **Allege the Elements of a Traditional Misrepresentation Tort.**

8       Apart from these fatal obstacles, the FAC fails for the same reasons as the original

9   complaint: it fails to plead essential elements of a traditional fraud or deceit tort, as required to

10  avoid preemption.

11      For starters, Plaintiffs do not plead materiality—even though the Ninth Circuit expressly

12  required proof of this element to survive preemption. Nor do Plaintiffs adequately plead scienter,

13  reliance, or injury—cornerstones of a fraud or deceit claim—and additional prerequisites to

14  survive preemption, let alone state them with particularity, as Rule 9(b) requires. *See In re*

15  *Cloudera, Inc*., 121 F.4th 1180, 1186 (9th Cir. 2024) (where a plaintiff "chooses to 'allege a unified

16  course of fraudulent conduct and rely entirely on that course of conduct as the basis of a claim,'"

17  then "the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that

18  claim *as a whole* must satisfy the particularity requirement of Rule 9(b)") (citation omitted,

19  emphasis added).

20      This pleading strategy reflects a calculated choice. By advancing a strict liability claim,

21  Plaintiffs attempt to avoid having to establish that they themselves—and each individual class

22  member—actually read, relied upon, and were injured by *each* misstatement in *each* individual

23  email they received. But it is precisely this type of strict liability theory—unmoored from the

24  traditional elements of fraud—that Congress preempted under CAN-SPAM.

25

26

1          1.      Plaintiffs Fail to Plead That Any Misrepresentations Were Material.

2          To establish a traditional fraud or deceit claim—and thus survive preemption under

3  *Virtumundo*—Plaintiffs must adequately allege a *materially* false statement.   *Virtumundo*

4  confirmed that claims based on "immaterial misstatements" do not survive preemption.  *Id.* at

5  1059, 1061-62 (stressing that "materiality component comport[s] with the policy pursued by the

6  federal legislation as a whole"); *id.* at 1065 (only claims premised on "*material*" misstatements

7  survive preemption) (emphasis in original).

8          Here, however, neither theory advanced identifies *any* misstatement that would be material

9  to Plaintiffs or to a reasonable consumer.

10                          a.      *The Omission Theory*

11         As support for their Omission Theory, Plaintiffs point to three emails that reference a sale

12  of 30% off "everything" in their subject line.  Plaintiffs complain that the *subject line itself* did not

13  disclose a minimum purchase amount applicable to these promotions.  FAC ¶ 34.

14         But Plaintiffs do not allege this omission was material to *their own* purchase decisions; that

15  they even *read* the associated subject lines; or that they ever purchased *anything* from Defendant.

16  *See* FAC ¶¶ 33–37.  This is fatal to their theory. *See Martin v. Miller*, 600 P.2d 698, 700 (Wash.

17  App. 1979) (examining whether representations were "material to *the plaintiffs' decision* to enter

18  into a purchase") (emphasis added); *Elcon*, 273 P.3d at 971 (finding no materiality where

19  misstatement was not relevant *to the plaintiff's* bid in a contracting case); *Hendrix ex rel. United*

20  *States v. J-M Mfg. Co., Inc.*, 76 F.4th 1164, 1169 & n.5 (9th Cir. 2023) (focusing on whether

21  misstatement was "material to *[the plaintiff's] decision-making*") (emphasis added); FAC ¶¶ 10–

22  32, 44–51, 67–74.

23         Further, because this condition of sale was prominently disclosed in large, bold, all-caps

24  font in each email body (*see* Dkt. 21, Exs. 2–4)—exactly where a reasonable consumer would

25  expect to find sale terms—Plaintiffs do not, and cannot, plausibly allege that this omission would

26  be material to a reasonable consumer, either.  No reasonable consumer would expect a *subject line*

DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED CLASS
ACTION COMPLAINT - 13
(Case No. 2:25-CV-01115-TSZ)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

1  to exhaustively recite all sale terms. *See supra* at 8-12; *Storey*, 2024 WL 2882270, at *6 (finding

2  a reasonable consumer would "read all of the terms and conditions"); *Shellenberger*, 2025 WL

3  732874, at *6. And indeed, the customer *had* to open and read the email to click on the enclosed

4  link to the sale. *See* Dkt. 21, Exs. 2–4.

5  Because Plaintiffs fail to plead materiality in accordance with Rules 8(a)(2) *or* 9(b), as

6  required to survive preemption, the Omission Theory violates *both* Rules. *Robertson v. GMAC*

7  *Mortg. LLC*, 2013 WL 12175088, at *4 (W.D. Wash. Feb. 6, 2013), *aff'd*, 702 F. App'x 595 (9th

8  Cir. 2017) (dismissing claims because "materiality and damages" are not pled "with particularity"

9  under Rule 9(b)).

10              b.    *The Temporal Theory*

11  Plaintiffs fail to plausibly allege that understating the length of a sale by a single day—i.e.,

12  offering a discounted price for *one day longer* than initially advertised—constitutes a *material*

13  misrepresentation.

14  For one, Plaintiffs do not allege that any purported misrepresentation mattered *to their own*

15  decision to make a purchase. FAC ¶¶ 20–37. In fact, neither Plaintiff alleges that she even read

16  the representations on which her claim is based—much less attached significance to them—or

17  even purchased anything from Defendant. FAC ¶¶ 44–51.

18  The misstatements alleged are not material, as a matter of law, for another reason: no

19  reasonable consumer would attach importance to them when deciding *whether* to make a purchase.

20  To be material, a statement must be one that "[a] *reasonable* [person] would *clearly* attach

21  importance to the existence of" when deciding whether "to enter into the transaction." *Martin*,

22  600 P.2d at 700–01 (Wash. App. 1979) (emphasis added). To clear this high bar, the

23  misrepresentation must impact "the *very essence* of the bargain.'" *Universal Health Servs., Inc. v.*

24  *United States*, 579 U.S. 176, 193 n.5 (2016) (construing and quoting *Junius Constr. Co. v. Cohen*,

25  178 N.E. 672, 674 (N.Y. 1931)) (emphasis added); *E.I. DuPont de Nemours & Co. v. Fla.*

26  *Evergreen Foliage*, 744 A.2d 457, 462 (Del. 1999) (representation must concern "an essential part

DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED CLASS
ACTION COMPLAINT - 14
(Case No. 2:25-CV-01115-TSZ)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

1  of the transaction"); *accord Colorado State Bank of Walsh v. United State*s, 18 Cl. Ct. 611, 630

2  (1989), *aff'd*, 904 F.2d 45 (Fed. Cir. 1990).  By contrast, representations about facts "collateral to

3  the subject transaction" are not material.  16A Wash. Prac., Tort Law And Practice § 19:3.

4  Here, however, Plaintiffs do not plausibly allege that Defendant's alleged misstatements

5  went to the essence and substance of the transaction, and that a reasonable consumer would

6  "clearly attach" importance to them when deciding whether "to enter into [a] transaction." *Martin*,

7  600 P.2d at 700–01.  To the contrary, Defendants' alleged statements would have no impact on

8  *whether* a reasonable consumer decided "to enter into the transaction"; instead, at most, the

9  statements allegedly impacted *when* the consumer made their purchase—i.e., ostensibly one day

10  sooner to take advantage of the advertised promotion, and due to the "sense of urgency" allegedly

11  created.  *Id*.; FAC ¶¶ 20, 22.  But this is not enough.  "A material fact is one that *not only influences*

12  *and affects the transaction,* but also goes to its *very essence and substance*."  16A Wash. Prac.,

13  Tort Law And Practice § 19:3 (5th ed.) (emphasis added); *Universal Health*, 579 U.S. at 193 n.5.

14  Notably, a customer's decision to make a purchase one day sooner would have had no

15  impact on the fundamentals of the bargain.  In either case—whether the customer made the

16  purchase on the initially-advertised or the ultimate end date of the sale—she would have

17  undisputedly received the same goods at the same price.  "[The] very essence and substance" of

18  the transaction would not have changed one iota.  *Goldman v. Town of Plainfield*, 762 A.2d 854,

19  856 (Vt. 2000); *Zander v. Blumenthal*, 198 N.E.2d 93, 95 (Ohio Ct. App. 1964) (to be material

20  misrepresentation must "affect[] the identity, value, or character of the subject matter of the

21  contract"); *Stone v. Robie*, 29 A. 257, 257 (Vt. 1894) (misrepresentations not material where they

22  "did not relate to the quantity, quality, or value of the articles sold."); *see also Fed. Home Loan*

23  *Bank of Seattle v. Credit Suisse Sec. (USA) LLC*, 449 P.3d 1019, 1028 (Wash. 2019) (materiality

24  inquiry "is not one taken lightly"; "a minor misstatement that is not of actual import" is

25  insufficient).

26

DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED CLASS
ACTION COMPLAINT - 15
(Case No. 2:25-CV-01115-TSZ)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

Precisely for these reasons, Plaintiffs' counter—that understating the sale period by one day could possibly cause a hypothetical customer to feel a "sense of urgency" (FAC ¶¶ 20, 22)—has been squarely rejected. In *Brummett v. Washington's Lottery*, the plaintiff likewise alleged that defendant's advertisements created a false sense of urgency by misrepresenting the speed at which lottery tickets with "early bird" prizes were selling. 288 P.3d 48, 50–52, 55 (Wash. App. 2012). However, the court found these representations were not material because they did not go to the essence of the underlying transaction—i.e., the sale of a specific good at a specific price. *See id.* at 54. As the court explained, the plaintiff "did not attempt to show that these advertisements made any claims about either the scheduled raffle prizes or the 'early bird' prizes or that these advertisements misled him about the total number of prizes, the odds of winning, or the amount of money at stake." *Id.* Hence, mere "representations about the speed of sale"—and the sense of urgency they allegedly created for plaintiff to purchase tickets sooner—"even if false, were not material." *Id.*

Without plausible allegations of materiality, Plaintiffs' Temporal Theory flunks Rule 8(a)(2), *Braatz, LLC v. Red Mango FC, LLC*, 2015 WL 1893194, at *6 (N.D. Tex. Apr. 27, 2015) (rejecting "[t]hreadbare recitals" of materiality), and, to the extent Plaintiffs attempt to advance a fraud theory, Rule 9(b) as well, *Joseph v. Amazon.com, Inc.*, 46 F. Supp. 3d 1095, 1109 (W.D. Wash. 2014) (granting judgment on the pleading absent particularized allegations of any "material representation . . . that he had right to and did rely upon to his detriment").

### 2.    Plaintiffs Fail to Plead a Plausible Theory of Scienter.

Plaintiffs' claims also are preempted because they are premised on *unintentional* misstatements. While the Ninth Circuit was able to dismiss the plaintiff's claim in *Virtumundo* without addressing whether scienter existed, the court suggested that, to survive preemption, a claim must adequately allege "deceitfulness." *Omega*, 469 F.3d at 353-54 (fraud or deceit tort requires sender "knew" statements were false); *Virtumundo*, 575 F.3d at 1059, 1061–1063 ("traditionally *tortious* or *wrongful* conduct" required) (emphasis added). This requirement

DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED CLASS
ACTION COMPLAINT - 16
(Case No. 2:25-CV-01115-TSZ)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

1    accords with Congress's explicit focus on persons "seek[ing] to defraud consumers," S. REP. 108-

2    102, 2, by "*purposefully*" sending misleading information. 15 U.S.C. § 7701(a)(8) (emphasis

3    added); 15 U.S.C. § 7704(a)(2) (requiring "knowledge" of falsity to impose liability).

4         While the FAC adds scienter allegations to bolster Plaintiffs' Temporal Theory (FAC ¶¶

5    26-32)[2]—an apparent acknowledgment of this essential requirement to survive preemption—it

6    adds none to support Plaintiffs' Omission Theory.  *Compare with id*., ¶¶ 33-37.   Accordingly,

7    Plaintiffs' Omission Theory fails, once more, because Plaintiffs do not adequately allege that

8    Defendant acted with fraudulent intent when it conspicuously disclosed the minimum purchase

9    requirement in the body of each email sent but did not include an additional, identical disclosure

10   in the subject line.

11        Plaintiffs' conclusory averment that, on "information and belief" (FAC Preamble),

12   Defendant omitted such disclosure to "entice[] consumers to believe the promotional offer has

13   broader application than it truly does" fails without factual pleadings to support it.  *Id*., ¶ 33.  The

14   "general rule" in this Circuit is that "allegations of fraud based on information and belief do not

15   satisfy Rule 9(b)."  *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993).  While this rule "may

16   be relaxed" as to "matters within the opposing party's knowledge," this exception "does not nullify

17   Rule 9(b)."  *Id*.  To the contrary, "a plaintiff who makes allegations on information and belief must

18   state the *factual basis* for [her] belief."  *Id*.  (emphasis added).

19        Here, however, no factual basis is pled for the fraudulent intent Plaintiffs speculate.  *See*

20   FAC ¶¶ 33–37. This is fatal.  *See Moore v. Kayport Package Exp., Inc*., 885 F.2d 531, 540 (9th

21   Cir. 1989) (rejecting allegations made on "information and belief" that "do not adequately state

22   the facts on which the[] belief is founded, and thus fail to satisfy even the relaxed standard

23   enunciated in *Wool*"); *Tomek v. Apple Inc*., 636 F. App'x 712, 713 (9th Cir. 2016) (affirming

24   dismissal of complaint because plaintiff "has not alleged *specific facts* that 'allow[ ] the court to

25

26   _____

[2] Accordingly, for purposes of this motion to dismiss, Defendant does not challenge the sufficiency of Plaintiffs' scienter allegations regarding their Temporal Theory.  Defendant reserves the right to challenge whether Plaintiffs can *prove* scienter at the appropriate stage of the case.

DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED CLASS
ACTION COMPLAINT - 17
(Case No. 2:25-CV-01115-TSZ)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

draw the reasonable inference' that [the defendant] knew it was issuing misleading advertisements") (citing *Iqbal*, 556 U.S. at 678) (emphasis added); *Velicer v. Falconhead Cap., LLC*, 2020 WL 1182962, at *9 n.8 (W.D. Wash. Mar. 11, 2020) (dismissing complaint that failed to "allege facts supporting th[eir] belief" that defendant engaged in fraud); *In re Amazon Serv. Fee Litig.*, 2024 WL 3460939, at *8 (W.D. Wash. July 18, 2024) *appeal filed*, No. 24-5176 (9th Cir. Aug. 22, 2024) ("unwarranted deductions of fact" and "unreasonable inferences" do not pass muster under Rules 8(a)(2) *or* 9(b)); *accord Cook v. Brewer*, 637 F.3d 1002, 1006 (9th Cir. 2011).

Further, Plaintiffs' conclusory averment that Defendant omitted the purchase requirement to entice consumers to make purchases that were ineligible for the promotion advertised is not "plausible on its face" for another reason. *Tomek*, 636 F. App'x at 713. This speculated intent cannot be squared with Defendant's undisputed, prominent disclosure of the minimum purchase amount in large, bold, all-caps font in the email body itself, Dkt. 21, Exs. 2–4, as well as Defendant's separate disclosure of the minimum purchase amount in the email sub-header. *Id.* ¶ 8, Exs. 2, 4. Plaintiffs fail to explain why Defendant would conspicuously disclose the minimum purchase amount in the email body and sub-header, if its aim were to "trick[]" Plaintiffs into buying items ineligible for the promotion. FAC ¶ 33. Hence, "the complaint itself undermines [Plaintiff's] theory of the case and renders it implausible." *Orellana v. Mayorkas*, 6 F.4th 1034, 1043 (9th Cir. 2021); *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 999 & n.8 (9th Cir. 2014) (holding that where allegations in the complaint were internally inconsistent, the allegations supported "at best—a 'possible' basis to believe [plaintiffs' theory], not a 'plausible' one").

In any event, "[i]n evaluating plausibility," courts "*must* also consider an 'obvious alternative explanation'" for Defendant's alleged omission of the minimum purchase amount in the subject line, *Integra Med Analytics LLC v. Providence Health & Servs.*, 854 F. App'x 840, 844 (9th Cir. 2021) (emphasis added)—here, that its inclusion in the subject line was redundant and unnecessary, because this information was already prominently disclosed in the email body itself

DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED CLASS
ACTION COMPLAINT - 18
(Case No. 2:25-CV-01115-TSZ)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400  FAX +1.206.274.6401

1   (and the sub-header). *See Prudencio v. Midway Importing, Inc*., 831 F. App'x 808, 810 (9th Cir.

2   2020) ("When faced with two possible explanations, only one of which can be true and only one

3   of which results in liability," the Ninth Circuit has held, "*[s]omething more is needed*, such as facts

4   *tending to exclude the possibility* that the alternative explanation is true, in order to render

5   plaintiffs' allegations plausible.") (emphasis added, quotations omitted); *Jimenez v. Serv. Emps.*

6   *Int'l Union Loc. 775*, 2023 WL 6971457, at *1 (9th Cir. Oct. 23, 2023) (affirming dismissal of

7   complaint that fails to "exclude a plausible and innocuous alternative explanation" for alleged

8   conduct); *Levitt v. Yelp! Inc*., 765 F.3d 1123, 1136 (9th Cir. 2014) (rejecting attempted inference

9   of misconduct where reasonable, alternative explanations existed); *In re Century Aluminum Co.*

10  *Sec. Litig*., 729 F.3d 1104, 1108 (9th Cir. 2013).

11      Finally, even if the decision not to include all sale terms in the subject line were somehow

12  construed as inherently suspicious—a dubious proposition—merely alleging "suspicious

13  circumstances" is not enough.  *Milken*, 6 F.3d at 672.  Because Plaintiffs "fail[] to satisfy [even]

14  this relaxed version of Rule 9(b)," their Omission Theory is accordingly preempted.  *Id*.

15          3.      Reliance is Inadequately Pleaded.

16      The FAC should be dismissed for another reason: Plaintiffs do not allege they relied on

17  any purported misrepresentations, let alone were injured by them.  Instead, Plaintiffs allege an

18  innocuous technical violation of CEMA—precisely the type of state-law claim that CAN-SPAM

19  preempts.

20              a.      *CAN-SPAM Preempts Claims Premised on Harmless*

21                       *Misstatements.*

22      Claims based on harmless misstatements, where there is no reliance and injury, should also

23  be preempted.  Although the claims in *Omega* and *Virtumundo* failed on other independent

24  grounds, the courts' language and logic support the conclusion that reliance and injury must be

25  plausibly pled to survive preemption.  In *Omega*, the Fourth Circuit concluded that CAN-SPAM

26  preempted claims based on an Oklahoma analogue to CEMA that, like CEMA, "reach[ed] beyond

DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED CLASS
ACTION COMPLAINT - 19
(Case No. 2:25-CV-01115-TSZ)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

1   common law fraud or deceit"—torts that require reliance and injury.  469 F.3d at 353.  The Court

2   found the plaintiff's claim was not based on "one of the several tort actions based upon

3   misrepresentations."  *Id.* at 353-54.  The Fourth Circuit noted that the Oklahoma statute was "not

4   limited to inaccuracies" that would have "led to *detrimental reliance*" by the recipient.  *Id.*

5   (emphasis added).  And even though *Virtumundo*'s ultimate holding focused on materiality—the

6   issue raised on appeal—the Ninth Circuit stressed that plaintiff "was not in any way misled or

7   deceived," i.e., there was no detrimental reliance.  575 F.3d at 1063.

8       In *Kleffman v. Vonage Holdings Corp.*, the district court emphasized the importance of

9   detrimental reliance even more resoundingly.  2007 WL 1518650, *3 (C.D. Cal. May 23, 2007).

10  It found the plaintiff's claims were "clearly preempted" because the complaint "does not allege a

11  traditional tort theory at all, *or even that he was at any point mislead by any of the eleven Vonage*

12  *emails*."  *Id.* (emphasis added).  Notably, *Virtumundo* twice invoked *Kleffman's* preemption

13  analysis.  575 F.3d at 1063-64; *see also Silverstein v. Liquid Minds LLC*, B.C. 375173 (Cal. Super.

14  Ct., County of Los Angeles, August 18, 2009) (minute order) (Dkt. 20, Ex. A) (finding section

15  17529.5 claim preempted because it was based on "strict statutory interpretation" rather than

16  "traditional tort theories of fraud").

17      To be sure, some district courts in California have concluded that proof of reliance and

18  injury is unnecessary to invoke the preemption exception.  *See, e.g.*, *Asis Internet Servs. v.*

19  *Subscriberbase Inc.*, 2010 WL 1267763, at *11 (N.D. Cal. Apr. 1, 2010).  Those cases are

20  inapposite, however, because they involve claims premised on different legal theories, brought

21  under statutes imposing different requirements—including specific elements that CEMA omits

22  and that Plaintiffs fail to plead here (e.g., scienter and materiality).  For example, courts have

23  rejected preemption where the plaintiff alleged *materially* and *intentionally* false statements under

24  a California statute that specifically requires those elements.  *See, e.g.*, *Hoang v. Reunion.com,*

25  *Inc.*, 2010 WL 1340535, at *4 (N.D. Cal. Mar. 31, 2010); *Subscriberbase Inc.*, 2010 WL 1267763,

26  at *11 (finding claims based on Section 17529.5(a)(3) survive preemption because "Section

DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED CLASS
ACTION COMPLAINT - 20
(Case No. 2:25-CV-01115-TSZ)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

1    17529.5(a)(3) is also quite distinct from the Washington statute in *Virtumundo*," which allegedly

2    does not require materiality or fraudulent intent).  Here, by contrast, Plaintiffs advance a strict

3    liability theory under CEMA.

4         Moreover, cases rejecting a reliance or injury requirement to survive preemption are

5    incompatible with the Ninth Circuit's binding pronouncements in *Virtumundo*.  For example, those

6    authorities err by "broad[ly]" reading the preemption exception as "not limited *just* to common-

7    law fraud and other similar torts."  *Asis Internet Servs. v. Consumerbargaingiveaways, LLC,* 622

8    F. Supp. 2d 935, 941-42 (N.D. Cal. 2009) (emphasis in original); *Hypertouch, Inc. v. ValueClick*,

9    *Inc.,* 192 Cal. App. 4th 805, 826 (2011).  But *Virtumundo* forecloses this broader reading.  575

10   F.3d at 1061-63 (Congress created a "*limited*, *narrow* exception" for claims involving "traditional

11   tort theories" like fraud or deceit) (emphasis added).

12        Additionally, those authorities drew inferences from the text of the preemption provision

13   that the Ninth Circuit expressly rejected.  In *Consumerbargaingiveaways*, for example, the court

14   attached controlling significance to the term, "fraud," in Section 7701(b)(2), and its omission in

15   Section 7707(b)(1).  Based on this disparate language, the court assumed Congress intended the

16   preemption exception in Section 7707(b)(1) to extend *beyond* traditional misrepresentation torts.

17   622 F. Supp. 2d at 942.  Similarly, in *Hypertouch*, the court concluded that the use of the

18   disjunctive, "falsity *or* deception" and "fraudulent *or* deceptive . . . subject lines," meant that

19   Congress did not intend to limit the preemption to traditional fraud claims, for which reliance and

20   injury are necessary.  192 Cal. App. 4th at 826-27 (emphasis added).

21        But the Fourth Circuit and the Ninth Circuit squarely rejected this logic.  In *Omega*, the

22   Fourth Circuit stressed that the "maxim of *noscitur a sociis*" applies in "the context of disjunctive

23   lists," and that the above "pre-emption clause links 'falsity' with 'deception'—one of the several

24   tort actions based upon misrepresentations." 469 F.3d at 354.  The Ninth Circuit expressly adopted

25   *Omega*'s reasoning and conclusions.  *Virtumundo*, 575 F.3d at 1061-62.  As a result, the logical

26

DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED CLASS
ACTION COMPLAINT - 21
(Case No. 2:25-CV-01115-TSZ)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

1  reading of the disjunctive clause, "falsity or deception," is that only claims involving reliance and
2  injury survive preemption.

3  　　Further, district courts reaching a contrary result err by purporting to find ambiguity in
4  *Virtumundo* where there is none.  In *Subscriberbase Inc*., 2010 WL 1267763, at \*10, and *Asis*
5  *Internet Servs. v. Member Source Media, LLC*, 2010 WL 1610066, at \*2 (N.D. Cal. Apr. 20, 2010),
6  for example, the court presumed *Virtumundo* failed to resolve whether claims premised on
7  harmless misstatements survive preemption.   To the contrary, the Ninth Circuit stated
8  unequivocally, "[A]llowing a state to attach liability to *bare immaterial error*" would be
9  "inconsistent with the federal Act's preemption text," "structure," and "purpose." 575 F.3d at 1061
10 (claims based on "mere error" or "insignificant inaccuracies" preempted) (emphasis added).

11 　　Finally, those authorities err by concluding the absence of reliance and injury requirements
12 comports with Congress's aims.  *Member Source*, 2010 WL 1610066, at \*3; *Subscriberbase Inc*.,
13 2010 WL 1267763, at \*12; *Hypertouch*, 192 Cal. App. 4th at 829.  But if claims premised on
14 harmless misstatements survive preemption, "[t]he strict liability standard imposed by a state such
15 as [Washington] would become a de facto national standard, with all the burdens that imposed,
16 even though the CAN–SPAM Act indicates that Congress believed a less demanding standard
17 would best balance the competing interests at stake." *Omega*, 469 F.3d at 356; *accord Virtumundo*,
18 575 F.3d at 1061-63.  Indeed, this theory would enable *any* individual state to unilaterally
19 "broaden[] the class of persons who may be held responsible" for sending emails with misleading
20 subject lines and thus upend the delicate balance Congress struck. *Hypertouch*, 192 Cal. App. 4th
21 at 829.

22 　　Although a plaintiff must plead that *she herself* reasonably relied upon and was injured by
23 the misstatement alleged to state a traditional fraud or deceit claim, *Elcon*, 273 P.3d at 970—and
24 thus survive preemption under *Virtumundo's* stated logic—"there is no allegation of 'reliance' to
25 be found *anywhere*" in the FAC, as discussed below.  *Isomedia*, 2009 WL 10676391, at \*4
26 (emphasis added).

DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED CLASS
ACTION COMPLAINT - 22
(Case No. 2:25-CV-01115-TSZ)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

### b.    The Omission Theory

Plaintiffs' Omission Theory fails because neither Plaintiff alleges that, *due to the omission* of the minimum purchase amount in an email subject line, *she herself* was denied any advertised (or perceived) promotion, forewent comparison shopping, or suffered any other articulated injury. FAC ¶¶ 33–37, 47–51; *see Ticey v. Fed. Deposit Ins. Corp.*, 2023 WL 4743913, at *2 (W.D. Wash. July 25, 2023), *aff'd*, 2025 WL 671114 (9th Cir. Mar. 3, 2025) (dismissing complaint that "failed to provide sufficiently detailed and particularized allegations" establishing how plaintiffs "justifiabl[y] relied on the misstatements" to their detriment); *Bisson v. Bank of Am., N.A.*, 919 F. Supp. 2d 1130, 1137 (W.D. Wash. 2013) (dismissing claim that failed to "match allegedly fraudulent statements to particular *Plaintiffs* and explain how *each Plaintiff* relied on that statement and suffered damages") (emphasis added); *Benanav v. Healthy Paws Pet Ins., LLC*, 2021 WL 4319447, at *10 (W.D. Wash. Sept. 23, 2021) (dismissing fraud claim because "nowhere does [the complaint] allege that *Plaintiffs* actually reviewed and/or relied upon" alleged misstatements) (emphasis added).

### c.    The Temporal Theory

Plaintiffs' Temporal Theory fails for similar reasons. Neither Plaintiff alleges that *she herself* read—let alone relied upon—any purported understatement of the ultimate sale period. FAC ¶¶ 48, 50–51. And while Plaintiffs speculate that a hypothetical shopper could possibly feel a "sense of urgency" if she read such a subject line (*id.*, ¶¶ 20–22), Plaintiffs do not claim that *they themselves* ever: (i) read any such subject line; (ii) opened any associated email; (iii) felt any "urgency" to make a purchase, or forewent comparison shopping, as a result; or (iv) bought anything from Defendant. *Id.*, ¶¶ 20–32, 48, 50–51.

Furthermore, Plaintiffs' bare allegations that they *"received"* emails from Defendant, and that emails misstating the ultimate sale period could potentially "clog" some consumers' inboxes, are insufficient. FAC ¶¶ 24, 48, 50–51. A complaint about the *volume* of emails received "is not the same as an allegation that *[Plaintiffs]* acted in reliance upon the information contained in it."

DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED CLASS
ACTION COMPLAINT - 23
(Case No. 2:25-CV-01115-TSZ)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400    FAX +1.206.274.6401

1   *Isomedia*, 2009 WL 10676391, at *4 (emphasis added); *Elcon*, 273 P.3d at 970 (requiring

2   *plaintiff's* "reliance on the truth of the representations" and "consequent damage" to establish a

3   traditional fraud claim).

4                         4.       Injury is Inadequately Pled.

5          Nor does either Plaintiff plead actual injury—a separate requirement to establish fraud or

6   deceit. *See supra* at 20-24; *Elcon*, 273 P.3d at 970; FAC ¶¶ 82–83, Request for Relief, ¶ F (seeking

7   statutory damages only).  Plaintiffs' complaint about the *volume* of emails they received is

8   irrelevant: neither Plaintiff alleges that she was injured *as a result of any alleged misstatement* or

9   omission in any email subject line—as required under the traditional tort concepts discussed at

10  length in *Omega* and *Virtumundo*.  FAC ¶¶ 24, 48; *see supra* at 5.  Both theories are thus preempted

11  for this reason as well.

12         **D.**     **Plaintiffs' CPA Claim Must Be Dismissed Because It Is Predicated on Her**

13                **Failed CEMA Claim.**

14         Because Plaintiffs' CEMA claims fail as a matter of law, their CPA claim, which is solely

15  "grounded in CEMA violations, [is] likewise inadequate and [] properly dismissed." *Virtumundo*,

16  575 F.3d at 1065; *Taie v. Ten Bridges LLC*, 704 F. Supp. 3d 1147, 1154 (W.D. Wash. 2023)

17  (dismissing CPA claim where underlying statutory claim failed); FAC ¶¶ 4, 12, 75–86 (alleging

18  CEMA violation is a "per se" CPA violation).

19                         **V.**      **CONCLUSION**

20         Because Plaintiffs' strict liability theory cannot survive preemption on any set of facts,

21  amendment would be futile, and the FAC should be dismissed with prejudice.  *See Lucky Star*

22  *Enters. III, LLC v. Wells Fargo Bank, N.A.*, 585 F. Supp. 3d 1297, 1304 (W.D. Wash. 2022)

23  (dismissing preempted claims with prejudice); *Herguan Univ. v. Immigr. & Customs Enf't*, 258 F.

24  Supp. 3d 1050, 1071 (N.D. Cal. 2017) (dismissing with prejudice where plaintiff "failed to respond

25  to Defendants' previous motion to dismiss" and the "amended complaint only made minor changes

26  and did not cure the deficiencies identified in Defendants' original motion to dismiss"); *Wimo*

DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED CLASS
ACTION COMPLAINT - 24
(Case No. 2:25-CV-01115-TSZ)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

1  *Labs LLC v. eBay Inc.*, 2016 WL 11507382, at *4 (C.D. Cal. Jan. 28, 2016) (dismissing with

2  prejudice where plaintiff, before filing an amended complaint, "had the benefit of reviewing"

3  defendant's motion to dismiss the original complaint).

4      Finally, even this Court were ultimately to conclude that one—but not both—theories

5  advanced were preempted, the dismissal of one theory would have significant utility, by focusing

6  discovery, narrowing the scope of the case, and streamlining subsequent motion practice.

7

8  DATED:  September 30, 2025.

9

10      *I certify that this memorandum contains 8,398 words, in compliance with the Local Civil Rules.*

11

12      **MORGAN, LEWIS & BOCKIUS LLP**

13      By: *s/ Damon C. Elder*
        Damon C. Elder, WSBA No. 46754

14      Andrew DeCarlow, WSBA No. 54471
        1301 Second Avenue, Suite 3000

15      Seattle, WA 98101
        Phone: (206) 274-6400

16      Email: damon.elder@morganlewis.com

17      andrew.decarlow@morganlewis.com

18

19      Ari M. Selman (*pro hac vice*)
        101 Park Avenue

20      New York, NY 10178-0060
        Phone: (212) 309-6000

21      Email: ari.selman@morganlewis.com

22      *Counsel for Defendant Vineyard Vines, LLC*

23

24

25

26

DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED CLASS
ACTION COMPLAINT - 25
(Case No. 2:25-CV-01115-TSZ)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401