The Honorable Thomas S. Zilly

1

2

3

4

5

6

7    UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
8                          AT SEATTLE

9

10   ANGEE HARRINGTON and LAUREN
ARNDT, on behalf of themselves and all others          NO. 2:25-cv-01115-TSZ
similarly situated,
11
                                                        **PLAINTIFFS' RESPONSE IN**
                    Plaintiffs,                          **OPPOSITION TO DEFENDANT'S**
12                                                       **MOTION TO DISMISS THE FIRST**
                                                        **AMENDED COMPLAINT**
13           v.
                                                        **NOTE ON MOTION CALENDAR:**
14   VINEYARD VINES, LLC, a Connecticut                  **October 28, 2025**
limited liability company,
15
                    Defendant.
16

17

18

19

20

21

22

23

24

25

26

27

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT
(Case No. 2:25-cv-01115-TSZ) - i

# **TABLE OF CONTENTS**

I. NATURE OF THE CASE ................................................................................... 1

II. PRELIMINARY STATEMENT ........................................................................ 1

III. FACTUAL BACKGROUND ............................................................................. 3

IV. ARGUMENT ...................................................................................................... 4

   A. Rule 12(b)(6) pleading standard ......................................................................... 4

   B. CEMA's subject line provision is not preempted by CAN-SPAM because it fits squarely within the law's savings clause. ........................................................... 4

      1. CEMA lawfully regulates deceptive subject lines in commercial email. ............. 5

      2. CEMA targets deceptive representations of fact and remains valid without importing elements of common law fraud. ........................................................ 8

   C. Plaintiffs plausibly allege violations of CEMA's subject line provision. ...................... 14

      1. Plaintiffs state a claim based on the Category 1 subject lines. ........................... 15

      2. Plaintiffs state a claim based on the Category 2 subject lines. ........................... 16

      3. CEMA does not require allegations of intent, reliance, or actual damages. ...... 18

   D. CEMA imposes statutory liability for deceptive conduct and is not subject to Rule 9(b)'s heightened pleading standard. ............................................................... 20

      1. Rule 9(b) does not apply .................................................................................. 20

      2. The FAC nonetheless satisfies Rule 9(b). ........................................................ 21

   E. Plaintiffs state a claim under the CPA. .............................................................. 21

V. CONCLUSION ................................................................................................. 22

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT
(Case No. 2:25-cv-01115-TSZ) - ii

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101-3147
TEL. 206.682.5600 • FAX 206.682.2992

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aaland v. CRST Home Sols., LLC*,
  2025 WL 2641255 (Wash. Ct. App. Sept. 15, 2025) .........................................................20

*Am. Apparel & Footwear Ass'n, Inc. v. Baden*,
  107 F.4th 934 (9th Cir. 2024) ...........................................................................................5

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..........................................................................................................4

*Asis Internet Servs. v. Consumerbargaingiveaways, LLC*,
  622 F. Supp. 2d 935 (N.D. Cal. 2009)................................................................9, 10, 11, 12

*Asis Internet Servs. v. Member Source Media, LLC*,
  2010 WL 1610066 (N.D. Cal. Apr. 20, 2010)...............................................................10, 13

*Asis Internet Servs. v. Subscriberbase, Inc.*,
  2010 WL 1267763 (N.D. Cal. Apr. 1, 2010)............................................................... *passim*

*Beyond Sys. v. Kraft Foods, Inc.*,
  777 F.3d 712 (4th Cir. 2015) .......................................................................................12, 13

*Brown v. Old Navy, LLC*,
  567 P.3d 38 (Wash. 2025) .................................................................................... *passim*

*Gordon v. Impulse Mktg. Grp., Inc.*,
  375 F. Supp. 2d 1040 (E.D. Wash. 2005).........................................................................3, 21

*Gordon v. Virtumundo, Inc.*,
  2007 WL 1459395 (W.D. Wash. 2007), *aff'd*, 575 F.3d 1040 (9th Cir. 2009).....................6

*Gordon v. Virtumundo, Inc.*,
  575 F.3d 1040 (9th Cir. 2009) .............................................................................. *passim*

*Gragg v. Orange Cab Co.*,
  145 F. Supp. 3d 1046 (W.D. Wash. 2015) ......................................................................21

*Hoang v. Reunion.com, Inc.*,
  2010 WL 1340535 (N.D. Cal. Mar. 31, 2010) ........................................................7, 10, 11

*Hypertouch, Inc. v. ValueClick, Inc.*,
  192 Cal. App. 4th 805 (2011).............................................................................................13

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT
(Case No. 2:25-cv-01115-TSZ) - iii

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101-3147
TEL. 206.682.5600 • FAX 206.682.2992

*Livid Holdings Ltd. v Salomon Smith Barney, Inc.*,
    416 F.3d 940 (9th Cir. 2005) ........................................................................4

*Medtronic, Inc. v. Lohr*,
    518 U.S. 470 (1996) ....................................................................................12

*Metrophones Telecomms., Inc. v. Glob. Crossing Telecomms., Inc.*,
    423 F.3d 1056 (9th Cir. 2005) ......................................................................5

*Omega World Travel, Inc. v. Mummagraphics, Inc.*,
    469 F.3d 348 (4th Cir. 2006) ......................................................................12

*Panag v. Farmers Ins. Co. of Wash.*,
    204 P.3d 885 (Wash. 2009) .........................................................................20

*Reid v. Johnson & Johnson*,
    780 F.3d 952 (9th Cir. 2015) ......................................................................16

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) ......................................................................21

*Universal Life Church Monastery Storehouse v. King*,
    2019 WL 2524993 (W.D. Wash. June 19, 2019) ........................................16

*Wagner v. Spire Vision*,
    2014 WL 889483 (N.D. Cal. Mar. 3, 2014) .................................................9

*Whiteside v. Kimberly Clark Corp.*,
    108 F.4th 771 (9th Cir. 2024) .....................................................................16

*Young v. Toyota Motor Sales, U.S.A.*,
    472 P.3d 990 (Wash. 2020) .........................................................................20

**Statutes**

Cal. Bus. & Prof. Code § 17529.5(a)(3)...........................................................10

Controlling the Assault of Non-Solicited Pornography and Marketing Act
    (CAN-SPAM), 15 U.S.C. §§ 7701 - 7713.......................................... *passim*

Commercial Electronic Mail Act, Wash. Rev. Code § 19.190.  (CEMA) ......... *passim*

Washington Consumer Protection Act (CPA), Wash. Rev. Code § 19.86......... *passim*

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT
(Case No. 2:25-cv-01115-TSZ) - iv

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101-3147
TEL. 206.682.5600 • FAX 206.682.2992

1

**Other Authorities**

2

FRCP 9(b)......................................................................................................................2, 3, 20, 21

3

FRCP 12(b)(6)..........................................................................................................................4

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT
(Case No. 2:25-cv-01115-TSZ) - v

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101-3147
TEL. 206.682.5600 ● FAX 206.682.2992

## I.  <u>NATURE OF THE CASE</u>

This case concerns Defendant Vineyard Vines, LLC's use of false and misleading subject lines in commercial emails sent to consumers in Washington. First, Defendant touts limited-time sales—using phrases in subject lines such as "Ends Tonight" and "Last Chance" to induce consumers to buy quickly—then sends follow-up emails with subject lines announcing that the same promotion has been "extended." These so-called "extensions" are not genuine last-minute decisions, but a recurring marketing tactic that misleads consumers into believing they face a fleeting opportunity. Second, Defendant advertises blanket discounts—using subject lines such as "30% Off Everything"—that in fact apply only to purchases above a minimum order threshold. For most individual products, that threshold exceeds the item's price, meaning consumers cannot obtain the advertised discount for "everything." This practice overstates the scope of the promotion and deceives consumers about the true terms of the offer.

The Commercial Electronic Mail Act ("CEMA"), Wash. Rev. Code § 19.190.020(1)(b), prohibits commercial email that "[c]ontains false or misleading information in the subject line," and a violation of CEMA constitutes a per se violation of the Washington Consumer Protection Act ("CPA"), Wash. Rev. Code § 19.86 *et seq.* Plaintiffs bring this action on behalf of themselves and other Washingtonians who received these emails from Defendant.

## II.  <u>PRELIMINARY STATEMENT</u>

Defendant's Motion to Dismiss must be denied because it neither confronts the statute it violated nor addresses Plaintiffs' well-pled allegations. Rather than defend the truthfulness of its subject lines, Defendant resorts to factual and legal misdirection: it sidesteps CEMA's text and purpose, misreads precedent, recasts affirmative misrepresentations as mere "omissions," and invokes doctrines that have nothing to do with CEMA.

Defendant's central argument—that the federal Controlling the Assault of Non-Solicited Pornography and Marketing Act ("CAN-SPAM") preempts Plaintiffs' claims—misconstrues both the statute's savings clause and controlling precedent. CAN-SPAM expressly preserves

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT
(Case No. 2:25-cv-01115-TSZ) - 1

1   state laws that prohibit "falsity or deception in any portion of a commercial electronic mail

2   message." 15 U.S.C. § 7707(b)(1). CEMA's subject line provision is a paradigmatic example:

3   it prohibits sending a commercial email that "[c]ontains false or misleading information in the

4   subject line." Wash. Rev. Code § 19.190.020(1)(b). That statutory text places CEMA squarely

5   within the category of state laws Congress intended to preserve. If that close fit is not enough to

6   save the statute from preemption, the Washington Supreme Court's opinion in *Brown v. Old*

7   *Navy, LLC*, 567 P.3d 38 (Wash. 2025), cinches the matter. *Brown* holds that CEMA applies to

8   "representations of fact—like the duration or availability of a promotion, its terms and nature,

9   the cost of goods, and other facts Washington residents would depend on in making their

10  consumer decisions"—exactly the kind of misrepresentations at issue here. *Id.* at 47. *Brown*

11  answers the Ninth Circuit's invitation in *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040 (9th Cir.

12  2009), for Washington courts to construe CEMA in a manner that saves it from preemption. It

13  also aligns CEMA with CAN-SPAM. Defendant's contrary theory has no footing in the text of

14  CAN-SPAM, the statute Congress saved, or the law of this State.

15      Defendant also mischaracterizes the nature of Plaintiffs' allegations. Plaintiffs do not

16  allege "technical and immaterial" inaccuracies, "omissions," or "less than comprehensive"

17  information in Defendant's subject lines. Mot. at 2, 8. Rather, they allege that Defendant used

18  email subject lines to affirmatively misrepresent facts about promotional offers that reasonable

19  consumers would rely on in making purchase decisions. Defendant's attempt to reframe these

20  allegations is a self-serving but mistaken effort to drag Plaintiffs' claims outside CAN-SPAM's

21  savings clause. It fails because both categories of the subject lines at issue contain affirmative

22  misrepresentations of fact, not immaterial inaccuracies or omissions. Those deceptive subject

23  lines have nothing in common with the technical deficiencies at issue in *Virtumundo*.

24      Defendant's Rule 9(b) argument likewise fails. CEMA does not sound in fraud; it targets

25  objectively deceptive content in commercial email, not fraudulent intent. Thus, as the Eastern

26  District of Washington has recognized, CEMA claims "do not trigger the heightened pleading

27

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT
(Case No. 2:25-cv-01115-TSZ) - 2

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101-3147
TEL. 206.682.5600 • FAX 206.682.2992

1    requirements of Rule 9(b)." *Gordon v. Impulse Mktg. Grp., Inc.*, 375 F. Supp. 2d 1040, 1048

2    (E.D. Wash. 2005). Applying Rule 9(b) here would distort CEMA's design by importing

3    elements of common-law fraud that the Washington Legislature deliberately omitted.

4         At bottom, Defendant's preemption theory cannot be reconciled with the statutes at issue

5    or the Washington Supreme Court's binding construction of CEMA. *Brown* confined CEMA to

6    objectively deceptive email subject lines, aligning it with CAN-SPAM's framework. Plaintiffs'

7    well-pled claims fit within that scheme. The motion to dismiss should be denied.

8                    **III.    FACTUAL BACKGROUND**

9         Plaintiffs allege that Defendant repeatedly violated CEMA by sending them commercial

10   emails with false or misleading information in the subject lines. Defendant "uses a variety of

11   tricks and deceptive language to influence consumer behavior." Doc. 23 ("FAC") ¶ 3.

12   Defendant's "false or misleading subject lines can be broken into at least two categories: (a)

13   subject lines that describe a specific, limited-time promotion that is not, in fact, limited to the

14   timeframe described in the subject line [**Category 1 subject lines**]; and (b) subject lines stating

15   without qualification that a particular discount is being offered when, in reality, the discount

16   only applies to orders above a certain dollar amount that is not identified in the subject line

17   [**Category 2 subject lines**]." *Id.* ¶ 15. "In each case, the subject line conveys an objective

18   statement of fact that is false or misleading and that Washington residents would depend on in

19   making consumer purchasing decisions." *Id.* ¶ 16.

20        Defendant's use of deceptive subject lines was systematic, with Plaintiffs themselves

21   receiving dozens of such emails during the class period. *See id.* ¶¶ 24–30, 33, 37, 48. The subject

22   lines included urgent but false expiration dates such as "ENDS TONIGHT Up to 70% Off Sale

23   + 25% Off All" and sweeping and specific promises like "30% Off *Everything* + FREE

24   Shipping" that did not, in reality, apply to a purchase of any single item except for a handful of

25   the most expensive items available. *Id.* ¶¶ 29, 37. These tactics prey on consumer trust, induce

26

27   PLAINTIFFS' RESPONSE IN OPPOSITION TO
     DEFENDANT'S MOTION TO DISMISS FIRST
     AMENDED COMPLAINT
     (Case No. 2:25-cv-01115-TSZ) - 3

1    recipients to open emails under false pretenses, and pressure them into making purchases sooner

2    or in greater amounts than they otherwise would. *Id.* ¶¶ 20–22, 33–34.

3        Defendant transmitted these emails to Plaintiffs and others whom it knows or has reason

4    to know reside in Washington. *Id.* ¶¶ 38–43. In addition, Defendant's subject lines touting

5    purported "extensions" of limited-time promotions are deceptive because the company

6    "determines in advance how long it will offer a given promotion, such that it knows when it

7    represents the limited duration of the promotion that the description is untruthful." *Id.* ¶ 21.

## IV.    <u>ARGUMENT</u>

### A.    Rule 12(b)(6) pleading standard

10       "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

11   accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

12   U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim

13   is facially plausible "when the plaintiff pleads factual content that allows the court to draw the

14   reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 677–78.

15   When considering a motion to dismiss, a court construes the complaint in the light most

16   favorable to the nonmoving party. *Livid Holdings Ltd. v Salomon Smith Barney, Inc*., 416 F.3d

17   940, 946 (9th Cir. 2005).

### B.    CEMA's subject line provision is not preempted by CAN-SPAM because it fits squarely within the law's savings clause.

20       CAN-SPAM does not preempt CEMA's subject line provision. Congress expressly

21   preserved state statutes that prohibit falsity or deception in commercial email, and that clause

22   applies to statutes like CEMA that affirmatively regulate deceptive practices. The Washington

23   Supreme Court's opinion in *Brown* confirms that construction, adopting the kind of

24   interpretation the Ninth Circuit recognized would preserve CEMA from preemption.

25

26

27

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT
(Case No. 2:25-cv-01115-TSZ) - 4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

**1.    CEMA lawfully regulates deceptive subject lines in commercial email.**

"Express preemption is a question of statutory construction, requiring a court to look to the plain wording of the statute and surrounding statutory framework to determine whether Congress intended to preempt state law." *Am. Apparel & Footwear Ass'n, Inc. v. Baden*, 107 F.4th 934, 939 (9th Cir. 2024). "Of course, congressional purpose is the ultimate touchstone in every pre-emption case, and the plain wording of the express preemption clause necessarily contains the best evidence of Congress's preemptive intent." *Id.* (cleaned up). "The presence of an express preemption provision supports an inference that Congress did not intend to preempt matters beyond the reach of that provision." *Metrophones Telecomms., Inc. v. Glob. Crossing Telecomms., Inc.*, 423 F.3d 1056, 1072–73 (9th Cir. 2005).

CAN-SPAM expressly preempts some state statutes and regulations while saving others:

> This chapter supersedes any statute, regulation, or rule of a State or political subdivision of a State that expressly regulates the use of electronic mail to send commercial messages, *except to the extent that any such statute, regulation, or rule prohibits falsity or deception in any portion of a commercial electronic mail message or information attached thereto.*

15 U.S.C. § 7707(b)(1) (emphasis added). As relevant here, CEMA regulates commercial electronic mail messages sent to Washington residents that "contain false or misleading information in the subject line." Wash. Rev. Code § 19.190.020(1)(b). Because CEMA's subject line provision does just what Congress said states could do, it is saved from preemption based on CAN-SPAM's plain language alone.

Defendant acknowledges that "CAN-SPAM exempts from preemption state laws that 'prohibit falsity or deception'" in commercial emails, Mot. at 5, but it ignores the clear nexus between CAN-SPAM's savings clause and CEMA. Instead, Defendant erroneously relies on dicta from a Ninth Circuit case concerning the application of the preemption clause to an *entirely different provision* of CEMA.

In *Virtumundo*, the Ninth Circuit held that CAN-SPAM preempted claims brought under a separate provision of CEMA prohibiting commercial emails containing header information

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT
(Case No. 2:25-cv-01115-TSZ) - 5

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101-3147
TEL. 206.682.5600 • FAX 206.682.2992

1  that misrepresents or obscures the sender's identity. 575 F.3d at 1059 (citing Wash. Rev. Code

2  § 19.190.020(1)(a) (CEMA's "header provision")). The plaintiff had alleged that Virtumundo's

3  "use of fanciful domain names" that did not facially identify the sender rendered the emails

4  deceptive and contended "that CEMA's provisions require that 'Virtumundo' or a client's name

5  expressly appear in the 'from lines.'" *Id.* at 1064. The court explained that the alleged

6  deficiencies related to, "at most, non-deceptive statements or omissions," amounting to an

7  attempt to impose "a heightened content or labeling requirement." *Id.* As the Defendant here

8  emphasizes, the Ninth Circuit opined that CAN-SPAM's savings clause "refers to 'traditionally

9  tortious or wrongful conduct.'" *Id.* at 1062 (quoting *Omega World Travel, Inc. v.*

10 *Mummagraphics, Inc.*, 469 F.3d 348, 354 (4th Cir. 2006)). Because the plaintiff alleged only

11 "technical" and "non-deceptive statements or omissions" in email headers, the court held that

12 the allegations had "no basis in traditional tort theories and therefore fall beyond the ambit of

13 the exception language in the CAN-SPAM Act's express preemption clause." *Id.* at 1064.

14      *Virtumundo* does not help Defendant. The Ninth Circuit reviewed CAN-SPAM's

15 legislative history and noted that, on the one hand, "a State law requiring some or all commercial

16 e-mail to carry specific types of labels, or to follow a certain format or contain specified content,

17 would be preempted" while, on the other, "a State law prohibiting *fraudulent or deceptive*

18 headers, subject lines, or content in commercial e-mail would not be preempted." *Id.* at 1062

19 (quoting S. Rep. No. 108–102 at 21) (brackets omitted) (emphasis added). The CEMA provision

20 held to be preempted in *Virtumundo* fell into the first category. *See id.* at 1064 ("Nothing

21 contained in this claim rises to the level of 'falsity or deception' within the meaning of the CAN-

22 SPAM Act's preemption clause."). The CEMA provision at issue here falls into the second

23 category: fraudulent or deceptive email subject lines.

24      Moreover, in affirming the district court, the Ninth Circuit did not cast doubt on the

25 district court's statement that "CEMA claims that allege 'false or deceptive' e-mail headers

26 would fit into Congress's savings clause." *Gordon v. Virtumundo, Inc.*, 2007 WL 1459395, at

27

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT
(Case No. 2:25-cv-01115-TSZ) - 6

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101-3147
TEL. 206.682.5600 • FAX 206.682.2992

1    *12 (W.D. Wash. 2007), *aff'd*, 575 F.3d 1040 (9th Cir. 2009); *see also Hoang v. Reunion.com,*

2    *Inc.*, 2010 WL 1340535, at *6 n.5 (N.D. Cal. Mar. 31, 2010) (observing that the Ninth Circuit

3    did not "indicate any disagreement with the district court's statement [in *Virtumundo*] that some

4    claims under [CEMA] are not preempted" (cleaned up)). CEMA's subject line provision thus

5    prohibits precisely the sort of deceptive, wrongful conduct within the ambit of CAN-SPAM's

6    savings clause per the Ninth Circuit's reasoning. Thus, *Virtumundo* provides a useful framework

7    for analyzing the scope of preemption, but the Ninth Circuit's reasoning and analysis compel a

8    different holding here than in that case.

9        *Virtumundo* is also instructive in its approach to the construction of state law. The court

10   explained that state courts have the prerogative to "limit the broad language of CEMA" in ways

11   that affect preemption analysis. *Virtumundo*, 575 F.3d at 1059. The court cited a Washington

12   Court of Appeals case construing CEMA's *header* provision as broadly regulating "a vast array

13   of non-deceptive acts and practices," thus taking the header provision outside of the savings

14   clause. *Id.* (citing *Benson v. Or. Processing Serv., Inc.*, 150 P.3d 154, 156 (Wash. Ct. App.

15   2007)). But the court explained that should Washington courts at some point interpret the CEMA

16   header provision to "extend only to acts of deception," the law would survive preemption. *Id.*

17   ("The Washington Legislature or state courts may ultimately mold CEMA's broad language so

18   as to cabin its breadth or interpret the law in conformity with federal legislation. This task is,

19   however, a matter for the State, as sovereign, to resolve.").

20       A recent case regarding the scope of CEMA's *subject line* provision delivers the type of

21   clarification the Ninth Circuit invited. In *Brown*, the Washington Supreme Court held that the

22   subject line provision prohibits false or misleading "representations of fact" in subject lines,

23   such as statements about "the duration or availability of a promotion, its terms and nature, the

24   cost of goods, and other *facts Washington residents would depend on* in making their consumer

25   decisions." 567 P.3d 38, 47 (Wash. 2025) (emphasis added). Adding further gloss, the court

26   explained that the statute does *not* prohibit "mere puffery" such as "subjective statements,

27

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT
(Case No. 2:25-cv-01115-TSZ) - 7

opinions, and hyperbole." *Id.* Thus, far from imposing the kind of strict liability for technical mistakes in email headers that animated the Ninth Circuit's opinion in *Virtumundo*, CEMA's subject line provision now reaches only materially false or misleading representations of fact.[1]

While preemption is a federal question, the scope and interpretation of a state statute is a predicate question of state law. *See Virtumundo*, 575 F.3d at 1059 & n.17 (noting that "[s]ome state court decisions imply a narrow interpretation of CEMA"). After *Brown*, there is no question that CEMA's subject line provision does not prohibit "immaterial inaccuracies or omissions" or other "non-deceptive acts and practices," unlike the header provision the *Virtumundo* court found to be preempted. The Washington Supreme Court—the final arbiter of state law—has now "mold[ed] CEMA's broad language so as to cabin its breadth" and "interpret[ed] the law in conformity with federal legislation." *Virtumundo*, 575 F.3d at 1059. For this additional reason, the law is within CAN-SPAM's savings clause and is not preempted.

### 2. CEMA targets deceptive representations of fact and remains valid without importing elements of common law fraud.

Defendant correctly recognizes that a state anti-spam claim must be based on more than "'immaterial inaccuracies or omissions'" to survive preemption. Mot. at 2 (quoting *Virtumundo*, 575 F.3d at 1062). And post *Brown*, that will always be the case for a well-pled claim under CEMA's subject line provision. But Defendant goes a step too far when it claims a CEMA plaintiff must allege "essential elements of a traditional fraud or deceit tort," which it says

---

[1] *Brown* addressed a specific certified question: "whether [CEMA] prohibits *any* false or misleading information in subject lines or only false or misleading information about the commercial nature of the message." *Brown*, 567 P.3d at 41. As the court noted, a federal court previously construed this statute to reach only "false and misleading information *as to the nature of the email*, i.e. that the email is an advertisement." *Id.* at 42 (quoting *Weimin Chen v. Sur La Table, Inc.*, 655 F. Supp. 3d 1082, 1092 (W.D. Wash. 2023)). *Brown* rejected that narrow approach, holding that CEMA "prohibits sending Washington residents commercial e-mails that contain any false or misleading information in the subject lines of such e-mails." *Id.* at 47. But the court's emphasis of the word "any" must be read in the context of the certified question; it does not mean the statute reaches immaterial inaccuracies, which is clear from the explanation that CEMA does not prohibit mere puffery in subject lines and only covers "representations of fact" that "Washington residents would depend on in making their consumer decisions." *Id.*

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT
(Case No. 2:25-cv-01115-TSZ) - 8

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101-3147
TEL. 206.682.5600 ● FAX 206.682.2992

include reliance and actual damages (Mot. at 12)—elements which are, of course, absent from CEMA itself. Defendant's proposition does not follow from CAN-SPAM or *Virtumundo*, which is why "[t]he great weight of district court and state court decisions have agreed that a showing of reliance and damages is not necessary" for a state anti-spam claim to survive preemption. *Wagner v. Spire Vision*, 2014 WL 889483, at *3 (N.D. Cal. Mar. 3, 2014) (collecting cases).

District courts in this circuit have recognized that Congress's use of the disjunctive "falsity or deception" in the savings clause—as opposed to simply "fraud"—preserves statutory anti-deception regimes that operate independently of intent or reliance. These courts begin with the text and structure of CAN-SPAM's savings clause. In one federal district court case addressing California's deceptive subject line provision, the court explained that the

> defendants interpret the savings clause too narrowly: 'falsity or deception' is not limited just to common-law fraud and other similar torts. Statutory interpretation begins with the text of the statute. On its own terms, the savings clause exempts from preemption not only 'fraud' claims but rather laws that proscribe 'falsity *or* deception' in email advertisements. The Act does not define the words 'falsity' and 'deception.' Congress, however, is certainly familiar with the word 'fraud' and choose [sic] not to use it; the words 'falsity or deception' suggest broader application. In fact, as plaintiffs emphasize, Congress utilized the word 'fraud' in the very next subsection but not in the savings clause.

*Asis Internet Servs. v. Consumerbargaingiveaways, LLC*, 622 F. Supp. 2d 935, 942 (N.D. Cal. 2009) (citing 15 U.S.C. § 7707(b)(2)). The court declined to "confine the phrase 'falsity or deception' to strict common-law fraud such that anti-deception state actions not insisting on every element of common-law fraud are preempted." *Id.* at 944. After all, *Virtumundo* and CAN-SPAM's savings clause "refer disjunctively" to falsity *or* deception. *Asis Internet Servs. v. Subscriberbase, Inc.*, 2010 WL 1267763, at *11 (N.D. Cal. Apr. 1, 2010) (quoting 15 U.S.C. § 7707(b)(1)). "The term 'deception' would be redundant (if not misleading) if Congress meant to limit state regulation solely to common law fraud." *Id.* "This language supports a broad reading of the exemption within the savings clause, which [courts are] obliged to credit because

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT
(Case No. 2:25-cv-01115-TSZ) - 9

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101-3147
TEL. 206.682.5600 • FAX 206.682.2992

1   'express preemption statutory provisions should be given narrow interpretation.'" *Id.* (quoting

2   *Virtumundo*, 575 F.3d at 1060).

3       Moreover, nothing in CAN-SPAM's legislative history suggests Congress intended to

4   limit state regulation of commercial email solely to fraud claims. "Congress explicitly crafted

5   the savings clause so that preemption would turn on whether a state [statute] targets the behavior

6   of advertisers," which "suggests that states may regulate deceptive behavior without

7   consideration of conditions that do not turn on the behavior of advertisers," such as whether a

8   plaintiff relied to her detriment on a false or deceptive statement in an email. *Subscriberbase*,

9   2010 WL 1267763, at *12 ("[A]dding the traditional fraud elements of reliance and damages

10  does not add anything to Congress's efforts to create a uniform system of regulation governing

11  email advertisements . . . . This is because the elements of reliance and damages do not speak to

12  the substance of the emails or subject lines that are prohibited."); *see also Asis Internet Servs. v.*

13  *Member Source Media, LLC*, 2010 WL 1610066 (N.D. Cal. Apr. 20, 2010) (holding that plaintiff

14  "need not plead reliance and damages in order for its [California anti-spam law] claim to be

15  excepted from preemption"); *Hoang*, 2010 WL 1340535, at *4 (legislative history suggests "a

16  plaintiff alleging the receipt of a commercial e-mail containing a materially false or misleading

17  statement" need not allege reliance on that statement to avoid preemption);

18  *Consumerbargaingiveaways*, 622 F. Supp. 2d at 944 ("[T]his order will not confine the phrase

19  'falsity or deception' to strict common-law fraud such that anti-deception state actions not

20  insisting on every element of common-law fraud are preempted. Plaintiffs' claims are not

21  preempted merely because the complaint fails to plead, or Section 17529.5 fails to require,

22  reliance and/or damages.").[2]

---

23  [2] Defendant's attempt to distinguish *Hoang* and *Subscriberbase* misses the mark. The California
    statute at issue in those cases prohibits commercial emails with "a subject line that a person
24  knows would be likely to mislead a recipient … about a material fact regarding the contents or
    subject matter of the message." Cal. Bus. & Prof. Code § 17529.5(a)(3). This provision falls
25  within CAN-SPAM's savings clause because it targets deceptive conduct by senders rather than
    the reactions or reliance of recipients. *See Subscriberbase*, 2010 WL 1267763, at *11
26  (discussing Congress's intention for preemption to turn on the nature of advertiser behavior).

27

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT
(Case No. 2:25-cv-01115-TSZ) - 10

Defendant's interpretation of certain dicta in *Virtumundo* is overly narrow. The Ninth Circuit did not strictly limit the reach of the savings clause to "state-law claims based on '*traditional tort theories*' only." Mot. at 5 (quoting *Virtumundo*, 575 F.3d at 1061–64). To be sure, the court observed that Congress left "individual states *free to extend* traditional tort theories such as claims arising from fraud or deception to commercial e-mail communication." 575 F.3d at 1063 (emphasis added). But that observation was descriptive, not prescriptive. It was not tantamount to requiring parity between a state law that prohibits "falsity or deception" in commercial email and the elements of any given state's rendition of a common-law fraud or misrepresentation tort. *Consumerbargaingiveaways*, 622 F. Supp. 2d at 943 ("In all respects, this order declines to interpret 'falsity or deception' *only* in accordance with state tort law."). Rather, it simply requires that the state law target true falsity or deception in commercial email, not merely technical inaccuracies. As *Brown* confirms, CEMA does just that.

Similarly, Defendant incorrectly contends a showing of scienter is required for a CEMA claim to survive preemption. Mot. at 16–19. Nothing in CAN-SPAM or *Virtumundo* supports that view. Congress knows how to require proof of intent; it used the term "knowingly" in other sections of CAN-SPAM. *See, e.g.*, 15 U.S.C. § 7704(a)(1)(C). The savings clause focuses on the conduct that is prohibited—"falsity or deception in any portion of a commercial electronic mail message"—not the sender's mental state. The deliberate omission of a scienter requirement from the savings clause is decisive. Indeed, Plaintiffs are not aware of any post-*Virtumundo* decision holding that intent or knowledge is a prerequisite to avoid preemption.

Defendant further argues that, absent these requirements, CEMA imposes a standard fundamentally different from the one Congress adopted in CAN-SPAM and risks creating a "de

---

Relying on the legislative history identified in *Virtumundo*, the district court in *Hoang* correctly concluded that "Congress did not intend to preempt statutes that … provide a cause of action based solely on the receipt of e-mails containing false or deceptive information." *Hoang*, 2010 WL 1340535, at *16. The same is true here. CEMA's subject-line provision prohibits the sending of emails with false or misleading subject lines, which is an objective regulation of advertiser behavior within CAN-SPAM's savings clause.

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT
(Case No. 2:25-cv-01115-TSZ) - 11

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101-3147
TEL. 206.682.5600 • FAX 206.682.2992

1   facto national standard" for commercial email content. Mot. at 22 (quoting *Omega*, 469 F.3d at

2   356). That misses the mark. The question is not whether CEMA requires reliance or injury, but

3   whether its substantive standard for false or misleading subject lines diverges from the one

4   Congress established in CAN-SPAM. It does not. *Brown* narrowed CEMA's reach to the same

5   kind of materially and objectively deceptive subject lines that CAN-SPAM already prohibits.

6   *See Brown*, 567 P.3d at 47; 15 U.S.C. § 7704(a)(2). The statutes operate in harmony, with

7   CEMA providing a complementary state remedy. The coexistence of state and federal

8   enforcement based on federal standards is routine. *See, e.g.*, *Medtronic, Inc. v. Lohr*, 518 U.S.

9   470, 495 (1996) ("Nothing in [21 U.S.C.] § 360k denies Florida the right to provide a traditional

10  damages remedy for violations of common-law duties when those duties parallel federal

11  requirements."). There is thus no "de facto national standard" emanating from CEMA.

12      Defendant's arguments to the contrary misconstrue the case law. First, in *Omega*, the

13  Fourth Circuit simply "concluded that Congress could not have intended, by way of the carve-

14  out language, to allow states to enact laws that prohibit 'mere error' or 'insignificant

15  inaccuracies.'" *Virtumundo*, 575 F.3d at 1061 (quoting *Omega*, 469 F.3d at 354–55).

16  Defendant's suggestion that the "mere error" threshold—or, using Defendant's terminology,

17  "harmless misstatement" (Mot. at 19)—imposes reliance and injury requirements is wrong. *See*

18  *Consumerbargaingiveaways*, 622 F. Supp. 2d at 943 (stating that *Omega* "merely held that state

19  laws were preempted insofar as they permitted claims for immaterial errors" and did not hold

20  "that all elements of common-law fraud were required or that any particular element other than

21  materiality was required to survive preemption"). Indeed, the Fourth Circuit later clarified that

22  "a state's anti-spam statute is not preempted so long as it deals with falsity or deception *in the*

23  *vein* of tort." *Beyond Sys. v. Kraft Foods, Inc.*, 777 F.3d 712, 717 (4th Cir. 2015) (emphasis

24  added). The court's analysis of state court decisions interpreting anti-spam statutes makes clear

25

26

27

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT
(Case No. 2:25-cv-01115-TSZ) - 12

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101-3147
TEL. 206.682.5600 • FAX 206.682.2992

1   that those claims need not rise to the level of common law fraud or require the same elements

2   as any particular common law tort to survive preemption.[3] *See id.*

3       Defendant's other cases are distinguishable. *Kleffman v. Vonage Holdings Corp.*, a pre-

4   *Virtumundo* decision, is inapposite because the claims in that case involved the defendant's use

5   of different domain names in the sender field that the plaintiff conceded "literally and truthfully"

6   identified the defendant as the sender. 2007 WL 1518650, at *2 (C.D. Cal. May 22, 2007) ("The

7   failure to send mail from a single domain name that includes the word 'Vonage' is simply not a

8   misrepresentation in any ordinary sense of the word."). Unlike in this case, the plaintiff in

9   *Kleffman* did not allege that the emails contained affirmatively false or misleading statements

10  of fact, but rather that the defendant failed to include its name in the email sender field. *Id.* Far

11  from alleging material falsity or deception, the plaintiff's "innovative theories" about the sender

12  field, *id.*, were an attempt to impose the type of state-level "content or labeling requirement"

13  shot down in *Virtumundo*, 575 F.3d at 1064.

14      Further, Congress's intent to limit liability for "immaterial inaccuracies," per the Ninth

15  Circuit's reasoning in *Virtumundo*, does not impose de facto reliance and injury requirements.

16  As explained, courts have consistently held that state statutes regulating deceptive advertising

17  behavior fall within the clause even without requiring proof of reliance or damages. *See Asis*

18  *Internet Servs. v. Member Source Media, LLC*, No. C-08-1321 EMC, 2010 WL 1610066, at *3

19  (N.D. Cal. Apr. 20, 2010); *Subscriberbase*, 2010 WL 1267763, at *11; *Hypertouch, Inc. v.*

20  *ValueClick, Inc.*, 192 Cal. App. 4th 805, 828–30 (2011). Those decisions correctly recognize

21

22

23  [3] In *Beyond Systems*, the court analyzed controlling state court interpretations of the Maryland
    and California antispam laws in concluding that those states' laws are not preempted by CAN-

24  SPAM. *Beyond*, 777 F.3d at 717. As to California law, the court cited *Hypertouch Inc. v.*
    *Valueclick, Inc.*, where the California Court of Appeal stated that California's anti-spam law

25  "dispenses with many of the elements associated with common law fraud." 192 Cal. App. 4th
    805, 820 (2011). If Defendant were correct that a state anti-spam law must require allegations of

26  reliance and actual damages to survive preemption, then *Beyond Systems* would have come out
    the other way, with California's statute preempted.

27  PLAINTIFFS' RESPONSE IN OPPOSITION TO
    DEFENDANT'S MOTION TO DISMISS FIRST
    AMENDED COMPLAINT
    (Case No. 2:25-cv-01115-TSZ) - 13

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101-3147
TEL. 206.682.5600 • FAX 206.682.2992

1    that CAN-SPAM's savings clause turns on the nature of advertiser conduct, not on recipient

2    reliance or injury.

3         Defendant's argument that CEMA is preempted because it encompasses "immaterial

4    inaccuracies" or "harmless misstatements" (Mot. at 22) fares no better. Suggesting that a

5    misrepresentation must be "harmful" to escape preemption is simply another way of importing

6    reliance and damages requirements that Congress chose not to impose. Moreover, CEMA's

7    prohibition against false or misleading subject lines is clear and unambiguous, and *Brown*

8    forecloses any suggestion that the statute reaches subjective puffery or vague exaggeration.

9    *Brown*, 567 P.3d at 46–47 ("CEMA protects consumers by requiring that commercial e-mails

10   communicate honestly about the terms of a given promotion or sale in the subject line.").

11   Statements about "the duration or availability of a promotion, its terms and nature, [and] the cost

12   of goods" are factual representations that fall within the scope of CEMA and comfortably within

13   CAN-SPAM's savings clause. *Id.* at 47.

14        **C.    Plaintiffs plausibly allege violations of CEMA's subject line provision.**

15        Plaintiffs adequately allege that Defendant violated CEMA's subject line provision by

16   sending emails to Washington residents containing false or misleading information in the subject

17   line. FAC ¶¶ 67-74; *see* Wash. Rev. Code § 19.190.020(1)(b). The subject lines in each category

18   contain representations of fact about the duration of Defendant's sale or promotion, its terms

19   and nature, or the cost of the advertised goods—all representations that fall within the ambit of

20   CEMA's subject line truthfulness requirement because they concern facts consumers would

21   depend on in making their purchasing decisions. *See Brown*, 567 P.3d at 47. Despite Defendant's

22   self-serving recharacterizations, the two categories of subject lines reflect distinct forms of

23   deceptive conduct: creating false urgency and overstating the scope of the promotion. Both

24   plainly fall within CEMA's post-*Brown* scope.

25

26

27

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT
(Case No. 2:25-cv-01115-TSZ) - 14

1    2    3    4    5    6    7    8    9    10    11    12    13    14    15    16    17    18    19    20    21    22    23    24    25    26    27

**1.    Plaintiffs state a claim based on the Category 1 subject lines.**

In the Category 1 subject lines, Defendant states that certain promotions will end at a specific time (*e.g.*, "Last Day," "Ends Tonight") when it already plans to "extend" them, misleading consumers into making hurried purchases based on a fabricated sense of urgency. FAC ¶¶ 20–32. These subject lines violate CEMA because they contain misrepresentations of fact regarding "the duration or availability of a promotion" that "Washington residents would depend on in making their consumer decisions." *Brown*, 567 P.3d at 47. These subject lines had the capacity to deceive a reasonable consumer, or a substantial portion of the public, because the sales or promotions did not, in fact, end when the subject lines stated they would.

Defendant's effort to characterize the misrepresentations of fact in these subject lines as "immaterial" fails. Mot. at 13. Defendant cannot reconcile its position with the Washington Supreme Court's conclusion that objective representations of fact of this exact nature are actionable because they transcend "mere puffery" and concern facts that consumers use to make purchasing decisions—*i.e.*, they are material. *Brown*, 567 P.3d at 47. In fact, Defendant's Category 1 subject lines are the same type of subject lines presented to the Washington Supreme Court in *Brown*. *See id.* at 42 ("Plaintiffs allege that Old Navy violated RCW 19.190.020(1)(b) when it sent them e-mails that, for example, announced that a 50 percent off promotion was ending even though the retailer continued to offer the 50 percent off promotion in the days following the initial e-mail."). These objective misrepresentations of basic facts about a retail promotion have nothing in common with the technical inaccuracies and "non-deceptive statements or omissions" at issue in *Virtumundo*. 575 F.3d at 1064.

Defendant cites (sometimes decades-old) case law from outside the CEMA context and this circuit—including one case involving the materiality standard for a False Claims Act claim, which involves defrauding the U.S. Government—in arguing that a reasonable person would not attach importance to representations about the duration of a sale. Mot. at 14–16. But *Brown* foreclosed this line of attack when it deemed facts regarding the duration or availability of a promotion to be the type of facts that reasonable consumers depend on in making their decisions.

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT
(Case No. 2:25-cv-01115-TSZ) - 15

*Brown*, 567 P.3d at 47. Similarly, Defendant's effort to label its subject line misrepresentations as "puffery" fails because *Brown* distinguished puffery from concrete factual claims about the timing of a promotion. *See id.*

In any case, whether a subject line is false or misleading within the meaning of CEMA is either (a) a factual question inappropriate for resolution at this stage, as in the context of other consumer-protection statutes involving the reasonable consumer standard, *see, e.g., Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 778 (9th Cir. 2024) (claims under California consumer protection statutes), or (b) established as a matter of law so long as the plaintiff alleges conduct that has the capacity to deceive a substantial portion of the public, *see, e.g., Universal Life Church Monastery Storehouse v. King,* 2019 WL 2524993, at *3 (W.D. Wash. June 19, 2019) (unfair or deceptive practice claim under the CPA). In either case, Plaintiffs' allegations suffice. Whether a representation would mislead consumers is a question of fact not appropriate for decision on a motion to dismiss. *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015) (stating that the reasonable consumer standard "raises questions of fact that are appropriate for resolution on a motion to dismiss only in 'rare situations'" (brackets omitted)).

### 2. Plaintiffs state a claim based on the Category 2 subject lines.

Plaintiffs allege subject lines such as "30% Off Everything" were false or misleading because the discount applied only if the total order exceeded a minimum threshold higher than the price of most individual products. By recasting Plaintiffs' allegations of affirmative misrepresentations in the Category 2 subject lines as mere failures to include all relevant terms and conditions, Defendant attempts to put the claims in the same category with the "immaterial inaccuracies" and "omissions" that other courts found preempted under CAN-SPAM. That framing is wrong and is nothing more than a recycling of an argument rejected in *Brown*. Plaintiffs do not allege that Defendant failed to disclose certain conditions of the promotion; they allege that Defendant's subject lines *affirmatively conveyed false information* about the

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT
(Case No. 2:25-cv-01115-TSZ) - 16

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101-3147
TEL. 206.682.5600 • FAX 206.682.2992

scope of the advertised offers, which is prohibited under *Brown*. Defendant's "Omission Theory" framing and the omission cases it relies on are thus inapposite.

The half-truth, or partial omission, theory at issue in *Martin v. CCH, Inc.* was that the subject line of the defendant's email "intentionally omit[ted] the 'secret' 'information-harvesting' purpose of the e-mails, which [was] to surreptitiously allow Defendant to gather data about when the e-mail is opened and where the recipient is when he opens the e-mail." 784 F. Supp. 2d 1000, 1007 (N.D. Ill. 2011). Here, Plaintiffs do not allege that the deception lies in the surreptitious purpose of Defendant's emails. Plaintiffs point to affirmative representations in Defendant's subject lines—Defendant's statement that the percentage-off promotion applied to "everything" was false or misleading because a minimum purchase was required. This is far afield from what was alleged in *Martin*, and it is not an immaterial or "technical" allegation. Rather, these misrepresentations are well within the purview of CEMA's subject line provision per *Brown*. *Walton v. Network Solutions* is similarly unhelpful to Defendant—as is the memorandum opinion from the Circuit Court for Montgomery County relying on that case—because in *Walton*, unlike here, the plaintiff merely listed emails sent by the defendant and failed to provide any factual support for the conclusory allegation that the defendant's email subject lines were misleading. 110 A.3d 756, 766 (Md. Ct. Spec. App. 2015).

Other cases not involving anti-spam statutes or advertising email subject lines at all support Defendant's position to an even lesser degree.[4] In *Shellenberger v. AIG Warrantyguard, Inc.*, for example, the plaintiff alleged that the defendant's marketing materials for its dishwasher service plan "falsely or misleadingly represented that the Service Plan would include repair or replacement benefits, no out-of-pocket expenses, and 100% of required parts and labor

---

[4] Defendant's citation to *T-Mobile US, Inc. v. Simply Wireless, Inc.* (Mot. at 9) is particularly questionable given that *T-Mobile* did not involve a consumer claim, an advertising email, or any discussion about minimum purchase amounts being disclosed in the body of an email. 2022 WL 1486522 (W.D. Wash. May 11, 2022). Rather, it involved a dispute between a wireless carrier and a mobile phone sales company about the latter's use of the former's logo in advertisements. *See id.* at *3.

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT
(Case No. 2:25-cv-01115-TSZ) - 17

for the full duration of the term [plaintiff] selected." 2025 WL 732874, at *5 (W.D. Wash. Feb. 3, 2025). The plaintiff failed to plead a claim under the Washington CPA because a reasonable consumer would understand that the marketing materials would not contain all applicable terms and conditions, particularly since the offer itself included a disclaimer on the same page stating that limitations and exclusions applied. *See id.* at *13–14. But CEMA is different: the Washington legislature chose to target subject lines in advertising emails. All that matters, then, is whether the subject line itself *contains false or misleading information*. *See Brown*, 567 P.3d 38 at 46 ("There is nothing absurd about holding defendants liable for violating the law, even if that law is specifically focused on the subject line of the e-mail and not its body."). And even so, the subject lines at issue do not include disclaimers or indications of any kind that there were any limitations on the advertised discount—*i.e.*, they do not suggest in any way that the discount would not apply to "everything." Like the fabricated end dates and extensions in the Category 1 subject lines, the Category 2 subject lines misrepresent material facts regarding the scope of a promotion and therefore fall within CEMA's post-*Brown* reach.

### 3. CEMA does not require allegations of intent, reliance, or actual damages.

Despite the clear command of *Brown*, Defendant launches a broadside at CEMA's pleading requirements, complaining that "Plaintiffs seek to impose strict liability, based on speculative allegations concerning misstatements and omissions in subject lines that Plaintiffs themselves concede by silence were not material to them, did not deceive them, and did not otherwise harm them." Mot. at 2. This argument finds no support in the statute or any controlling authority.

CEMA imposes liability based on the objective content of a commercial email, not the sender's mental state or the recipient's reliance or loss. Nothing in the statute's text or legislative history imports those elements, and *Brown* confirms that CEMA targets false or misleading representations of fact that have the capacity to deceive a reasonable consumer. Whether the

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT (Case No. 2:25-cv-01115-TSZ) - 18

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101-3147
TEL. 206.682.5600 • FAX 206.682.2992

1    challenged subject lines meet that standard is a factual issue for later stages, not a pleading-stage

2    basis for dismissal.

3          Should the Court construe CEMA to require scienter (which it does not), the FAC meets

4    that requirement for both Category 1 and Category 2 subject lines. First, Defendant concedes

5    that Plaintiffs adequately plead scienter as to Category 1 subject lines. Mot. at 17 n.2. But

6    Plaintiffs also adequately allege facts to support the inference that Defendant intended to deceive

7    consumers with its Category 2 subject lines. The FAC alleges that the Category 2 subject lines

8    are premised on "a classic bait-and-switch tactic that entices consumers to believe the

9    promotional offer has broader application than it truly does." FAC ¶ 33. The purpose of this

10   "sleight of hand" was to "trick the consumer into thinking the promotion has no strings

11   attached." *Id.* ¶¶ 3, 33. These allegations go directly to Defendant's state of mind. Construing

12   these allegations in the light most favorable to Plaintiffs, it is reasonable to infer that Defendant

13   *knew* the "promotional language [in Category 2 subject lines] should not be taken at face value—

14   i.e., that the sale applied to all orders or 'everything.'" *Id.* ¶ 34. That is sufficient to show

15   Defendant's scienter as to Category 2 subject lines.

16         Defendant is also incorrect as a matter of law that Plaintiffs must show any given subject

17   lines were "material to *their own* purchase decisions." Mot. at 13. This attempt to graft a

18   "personal materiality" requirement onto the law is simply a recharacterization of the reliance

19   argument and fails for the same reasons. Like its California counterpart, CEMA liability turns

20   on whether the commercial e-mail contains information that is objectively false or misleading,

21   not on whether the recipient was personally deceived or acted in reliance. *See Subscriberbase*,

22   2010 WL 1267763, at *12 (stating that "whether the elements of reliance and damages manifest

23   in any instance depends upon the naivete, vulnerability, or circumstance of the recipient").

24   *Brown* applied an objective reasonable consumer test by framing the inquiry as whether a

25   representation of fact in the subject line is one that "*Washington residents would depend on* in

26   making their consumer decisions." *Brown*, 567 P.3d at 47 (emphasis added). And because

27

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT
(Case No. 2:25-cv-01115-TSZ) - 19

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101-3147
TEL. 206.682.5600 ● FAX 206.682.2992

CEMA violations are actionable through the CPA, the proper standard is whether the challenged subject line had the capacity to deceive a substantial portion of the public or was likely to mislead a reasonable consumer. *Young v. Toyota Motor Sales, U.S.A.*, 472 P.3d 990, 994 (Wash. 2020); *see also Virtumundo*, 575 F.3d at 1066 (stating that CPA claims must be "predicated on unfair or deceptive conduct that has 'the capacity to deceive a substantial portion of the public'" (quoting *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 535 (Wash. 1986))); *Panag v. Farmers Ins. Co. of Wash.*, 204 P.3d 885, 895 (Wash. 2009) ("Deception exists 'if there is a representation, omission or practice that is likely to mislead' a reasonable consumer." (quotation omitted)).

Moreover, if CEMA liability turned on whether each plaintiff could prove the subject line was material to them personally, it would gut the law's deterrence purpose and make the statute unenforceable in practice. *Cf. Aaland v. CRST Home Sols., LLC*, 2025 WL 2641255, at *3 (Wash. Ct. App. Sept. 15, 2025) ("[A]s a consumer protection statute, [Washington courts] construe CEMA liberally in favor of the consumers it aims to protect."). And again, placing the focus on the defendant's conduct does not run afoul of CAN-SPAM's preemption clause because Congress intended to allow states to "regulate deceptive behavior without consideration of conditions that do not turn on the behavior of advertisers." *Subscriberbase*, 2010 WL 1267763, at *12. Thus, CEMA's focus remains on the nature of the subject line itself, not the subjective reaction or harm to any particular recipient.

### D.  CEMA imposes statutory liability for deceptive conduct and is not subject to Rule 9(b)'s heightened pleading standard.

#### 1.  Rule 9(b) does not apply.

Defendant's argument that Federal Rule of Civil Procedure 9(b) applies is based on a faulty premise that any claim not preempted by CAN-SPAM must constitute a fraud claim and must therefore also be governed by Rule 9(b). But Plaintiffs do not allege fraud, and they need not do so to state a claim or avoid preemption. Thus, Rule 9(b) has no application here.

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT
(Case No. 2:25-cv-01115-TSZ) - 20

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101-3147
TEL. 206.682.5600 ● FAX 206.682.2992

As discussed above, CEMA imposes liability based on the objectively false or misleading nature of the subject line, without requiring proof of fraud, reliance, or actual injury. At least one court has expressly declined to apply Rule 9(b) to CEMA claims for that reason. *See Gordon v. Impulse Mktg. Grp., Inc.*, 375 F. Supp. 2d 1040, 1048 (E.D. Wash. 2005) ("Neither intent on the part of the sender, nor detrimental reliance on the part of the recipient, is required to prove a violation of RCW § 19.190.020, like it is required to prove fraud."). Rule 9(b), by contrast, governs fraud-based claims that hinge on intent to deceive. It plays no role where, as here, the governing statute regulates deceptive conduct based on what a reasonable consumer would find misleading. *Brown* confirms that CEMA liability turns on objective falsity, not scienter, and the FAC pleads to that standard.

### 2.      The FAC nonetheless satisfies Rule 9(b).

If the Court determines that Rule 9(b) applies, Plaintiffs meet that standard. Plaintiffs allege with specificity a non-exhaustive list of the false or misleading subject lines contained in Defendant's emails, state when those emails were received, and explain why each subject line was false or misleading. *See* FAC ¶¶ 15–16, 20–37. Plaintiffs thus provide "an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). Defendant cannot seriously contend the FAC fails to give "notice of the particular misconduct" at issue, which is all Rule 9(b) requires. *Id.*

### E.      Plaintiffs state a claim under the CPA.

Plaintiffs state a claim under the CPA because a violation of CEMA is a per se violation of the CPA. *See* Wash. Rev. Code § 19.190.030(3); *Brown*, 567 P.3d at 42. The symbiotic relationship between these two statutes is well established: once a plaintiff plausibly alleges a CEMA violation, the essential elements of a CPA claim are established as a matter of law. *Gragg v. Orange Cab Co.*, 145 F. Supp. 3d 1046, 1053–54 (W.D. Wash. 2015). Plaintiffs' CPA claim therefore follows directly from their CEMA allegations; no independent pleading of the CPA

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT
(Case No. 2:25-cv-01115-TSZ) - 21

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101-3147
TEL. 206.682.5600 ● FAX 206.682.2992

elements is required. The case cited by Defendant simply reflects that a CPA claim predicated on a CEMA violation cannot stand in the absence of a valid CEMA claim. *See* Mot. at 24. Here, Plaintiff has plausibly alleged a CEMA violation; the CPA claim proceeds as a matter of law.

## V.    CONCLUSION

The Court should deny Defendant's motion in full. Should the Court accept any of Defendant's arguments, Plaintiffs hereby request leave to amend to correct any pleading deficiencies.

DATED this 21st day of October, 2025.

*I certify that this memorandum contains 7,615 words, in compliance with the Local Civil Rules.*

TOUSLEY BRAIN STEPHENS PLLC

By: *Jason T. Dennett*
    Jason T. Dennett, WSBA #30686
    Kaleigh N. Boyd, WSBA #52684
    1200 Fifth Avenue, Suite 1700
    Seattle, WA 98101
    Tel: 206-682-5600
    Fax: 206-682-2992
    Email: jdennett@tousley.com
    kboyd@tousley.com

    Edwin J. Kilpela, Jr. (admitted *pro hac vice*)
    James Lamarca (admitted *pro hac vice*)
    WADE KILPELA SLADE LLP
    6425 Living Place, Suite 200
    Pittsburgh, PA 15206
    Tel: 412-314-0515
    Email: ek@waykayslay.com
    Email: jlamarca@waykayslay.com

    Evan E. North (admitted *pro hac vice*)
    NORTH LAW PLLC
    1900 Market Street, Suite 800
    Philadelphia, PA 19103
    Tel: 202-921-1651
    Email: evan@northlawpllc.com

E. Michelle Drake (*pro hac vice* forthcoming)
BERGER MONTAGUE PC
1229 Tyler Street NE, Suite 205
Minneapolis, MN 55413
Tel: 612-594-5999
Fax: 612-584-4470
Email: emdrake@bergermontague.com

Mark B. DeSanto (*pro hac vice* pending)
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: 215-875-3046
Fax: 215-875-4604
Email: mdesanto@bergermontague.com

Colleen Fewer (*pro hac vice* pending)
BERGER MONTAGUE PC
505 Montgomery Street, Suite 625
San Francisco, CA 94111
Tel: 415-376-2097
Email: cfewer@bergermontague.com

*Attorneys for Plaintiffs and the Proposed Class*

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT
(Case No. 2:25-cv-01115-TSZ) - 23

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101-3147
TEL. 206.682.5600 • FAX 206.682.2992